IN RE the INTEREST OF D.S.P., a juvenile:

I.P., Appellant-Petitioner,

R.A.C.P., Co-Appellant-Petitioner,

v.

STATE of Wisconsin, Respondent.

Supreme Court

*No. 89-1362. Oral argument November 25, 1991.—Decided February 18, 1992.*

(Also reported in 480 N.W.2d 234.)

For the appellant-petitioner there were briefs by *Michael J. Palid,* Marinette and oral argument by *Mr. Palid.*

For the co-appellant-petitioner there were briefs by *Frank J. Crisafi,* Madison and oral argument by *Mr. Crisafi.*

Guardian Ad Litem brief was filed by *Kim A. Coggins,* Marinette, with oral argument by *Ms. Coggins.*

LOUIS J. CECI, J. This case is before the court on petition for review of a published decision of the court of appeals, *In re Interest of D.S.P.,* 157 Wis. 2d 106, 458 N.W.2d 823 (Ct. App. 1990). The court of appeals affirmed an order by the circuit court for Marinette County, Circuit Judge William J. Duffy, presiding. The order terminated the parental rights of I.P. and R.A.C.P. as to their child D.S.P., an enrolled member of the Sault Ste. Marie Tribe of Chippewa Indians (the tribe), on grounds of abandonment under secs. 48.415(1)(a)2 and 3, Stats.[1] We granted both parents'

---

[1]Sections 48.415(1)(a) 2 and 3, Stats., provide as follows:

**48.415 Grounds for involuntary termination of parental rights.** At the fact-finding hearing the court or jury may make a finding that grounds exist for the termination of parental rights. Grounds for termination of parental rights shall be one of the following:

**(1) Abandonment.** (a) Abandonment may be established by a showing that:

. . .

2. The child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by s. 48.356(2) and the parent has failed to visit or communicate with the child for a period of 6 months or longer; or

3. The child has been left by the parent with a relative or other person, the parent knows or could discover the whereabouts of the

petitions for review of the court of appeals' opinion.

Three issues are presented on review. The first issue is whether the circuit court erred by instructing the jury on dual burdens of proof: "beyond a reasonable doubt" as required by the Indian Child Welfare Act (ICWA), 25 U.S.C. sec. 1912(f);[2] and "clear and convincing evidence" as required by sec. 48.31(1), Stats.[3] We hold that the dual burden of proof was proper.

The second issue is whether two Indian social workers were "qualified expert witnesses" as required by 25 U.S.C. sec. 1912(f), in light of the requirement in sec. 48.31(4), Stats.,[4] that a licensed physician specializing in

child and the parent has failed to visit or communicate with the child for a period of one year or longer.

[2]25 U.S.C. sec. 1912(f) provides as follows:

**[sec.] 1912. Pending court proceedings**

. . .

**(f) Parental rights termination orders; evidence; determination of damage to child**

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

[3]Section 48.31(1), Stats., provides as follows:

**48.31 Fact-finding hearing. (1)** In this section, 'fact-finding hearing' means . . . a hearing to determine if the allegations in . . . a petition to terminate parental rights are proved by clear and convincing evidence.

[4]Section 48.31(4), Stats., provides as follows:

**48.31 Fact-finding hearing . . ..**

. . .

**(4)** The court or jury shall make findings of fact and the court shall make conclusions of law relating to the allegations of a petition filed under s. 48.13(1) to (11m) [CHIPS petitions]. In cases alleging a child to be in need of protection or services under s. 48.13(11), the

psychiatry or a licensed psychologist testify as to emotional damage in children in need of protection or services (CHIPS) proceedings. We conclude that the circuit court did not abuse its discretion in ruling that the two Indian social workers were qualified expert witnesses, and we hold that sec. 48.31(4), which is applicable to CHIPS proceedings, is not applicable in termination of parental rights proceedings under sec. 48.415(1), Stats.

The third issue is whether the testimony of the witnesses supported a determination, as required by 25 U.S.C. sec. 1912(f), "that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." We hold that the witnesses' testimony supported the jury's determination.

We therefore affirm the decision of the court of appeals.

The facts are not in dispute. R.A.C.P. is the mother of D.S.P., who was born in March, 1984. D.S.P. was R.A.C.P.'s fifth child born to her out of wedlock. R.A.C.P.'s parental rights to the prior four children were terminated for reasons of neglect. During her entire pregnancy with D.S.P., although repeatedly advised to the contrary, R.A.C.P. continued to consume alcohol and did not eat properly.

I.P. is the adjudicated father of D.S.P. Both I.P. and D.S.P. are enrolled members of the tribe. I.P. and R.A.C.P. had married and were living in Michigan by the time of the trial in this case.

court shall not find that the child is suffering serious emotional damage unless a licensed physician specializing in psychiatry or a licensed psychologist appointed by the court to examine the child has testified at the hearing that in his or her opinion the condition exists, and adequate opportunity for the cross-examination of the physician or psychologist has been afforded . . ..

Beginning before D.S.P.'s birth and throughout the next few years, the Marinette County Department of Social Services (the department) attempted to assist R.A.C.P. with her parenting. Though D.S.P. was in his mother's custody for the first seven months of his life, R.A.C.P. often left him with babysitters for extended periods of time without explanation.

In October 1984, D.S.P. was placed in foster care. Eventually, the department filed a CHIPS petition stating that D.S.P. was in need of protection and services. Custody of D.S.P. was transferred to the department, and D.S.P. was formally placed in a foster home. The parents were warned that failure to visit D.S.P. could result in termination of their parental rights.

Despite the efforts of the department to assist the parents in establishing a relationship with D.S.P., the parents visited D.S.P. only rarely. Eventually, neither parent made any contact with D.S.P. for a period of over a year. Thus, the department filed a petition for termination of parental rights.

At the termination of parental rights trial, Martha Snyder, representing the tribe, testified that the tribe officially recommended supporting the termination of the parental rights of both I.P. and R.A.C.P. Following the jury trial, the circuit court entered an order terminating the parental rights of both parents. On appeal, the court of appeals affirmed.

■■■■

We first have to determine the appropriate standard of review. The first issue presented by this case is a matter of statutory interpretation, which is a question of law. *Pulsfus Farms v. Town of Leeds,* 149 Wis. 2d 797, 803-04, 440 N.W.2d 329 (1989). We review questions of law without deference to the decisions of the lower courts. *Id.* The second issue, whether the two Indian

social workers were qualified expert witnesses, "is a matter resting in the sound discretion of the circuit court, and unless it is shown that the circuit court abused its discretion, its ruling will stand." *State v. Robinson,* 146 Wis. 2d 315, 332, 431 N.W.2d 165 (1988). The third issue, whether the evidence supports a requirement of the ICWA, is a question of law. *Koenings v. Joseph Schlitz Brewing Co.,* 126 Wis. 2d 349, 358, 377 N.W.2d 593 (1985). However, because this question of law is intertwined with factual issues, we give the circuit court's decision on this issue some weight. *Id.*

The first issue presented by this case, the burden of proof applicable to a termination of parental rights hearing in cases involving the ICWA, is a case of first impression in this state. *In re Interest of D.S.P.,* 157 Wis. 2d at 119. Under the Wisconsin children's code, the burden of proof in a petition to terminate parental rights hearing is clear and convincing evidence. Section 48.31(1), Stats. However, under the ICWA, the burden of proof is "evidence beyond a reasonable doubt, including the testimony of qualified expert witnesses . . .." 25 U.S.C. sec. 1912(f). As stated above, the circuit court instructed the jury on dual burdens of proof. R.A.C.P. asserts that the dual burden of proof was improper because the Wisconsin children's code is superseded by the ICWA and because the ICWA mandates the use of the reasonable doubt standard in an involuntary termination of parental rights proceeding.

Federal legislation preempts state legislation when it is the intent of Congress to assert federal primacy in a particular field or when the state legislation conflicts with the federal legislation. *See Wisconsin Public Intervenor v. Mortier,* — U.S. —, —, 111 S. Ct. 2476, 2481–82 (1991). We find neither an express nor an implicit intent

within the ICWA to preempt the Wisconsin children's code. Rather, the ICWA expressly calls for the use of state law rather than the ICWA if the state law "provides a higher standard of protection" than that accorded by the ICWA. 25 U.S.C. sec. 1921. In addition, the ICWA is not pervasive, all-encompassing legislation, but rather sets forth minimum standards that must be followed. This is indicated by the stated congressional policy behind the ICWA:

> The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes . . ..

25 U.S.C. sec. 1902.

The ICWA does not preempt the Wisconsin children's code, and, therefore, the Wisconsin statutes can be read so as to harmonize them with the ICWA. The Wisconsin children's code states that the ICWA supersedes the provisions of the children's code in any child custody proceedings covered by the ICWA. Section 48.028, Stats. However, as the ICWA requires the use of state law whenever that state law provides a higher standard of protection than is mandated by the ICWA, we find it appropriate that where the children's code provides additional safeguards beyond what is mandated by the ICWA, those additional safeguards should be followed.

R.A.C.P. urges us to find that the ICWA mandates using the beyond a reasonable doubt standard for proof

of abandonment under sec. 48.415(1)(a), Stats. R.A.C.P. argues that the policy behind the ICWA is thwarted if sec. 48.415(1)(a) is proved by only clear and convincing evidence. We do not agree. The policies behind both the ICWA and the Wisconsin children's code are similar: to protect the best interests of the child and to preserve family stability, among other things. Section 48.01(1), Stats.; 25 U.S.C. sec. 1902. The ICWA strives to achieve this goal by requiring evidence proving beyond a reasonable doubt that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child before parental rights may be terminated. 25 U.S.C. sec. 1912(f). The children's code strives to achieve this goal by requiring clear and convincing evidence of abandonment, or other grounds for termination, before parental rights may be terminated. Sections 48.31(1) and 48.415, Stats.

■
The two different means of achieving these goals can be harmonized without requiring that the burden of proof be the same for both. Absent a clear indication that the state law should be abrogated, we decline to do so. The additional state law safeguards should be applied by the burden of proof mandated by the state law. A dual burden of proof, if mandated by the ICWA and state law, is therefore appropriate. The Alaska Supreme Court has come to a similar conclusion. *See Matter of J.R.B.,* 715 P.2d 1170, 1172 (Alaska 1986).

■
In the proceedings at issue here, the circuit court determined that a dual burden of proof was proper. As mandated by the ICWA, the circuit court required that the jury unanimously agree[5] beyond a reasonable doubt

---

[5]Although the ICWA does not explicitly require a unanimous verdict, its use is consistent with the highest burden of proof. As

"that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." 25 U.S.C. sec. 1912(f). The circuit court also required that the jury unanimously agree that there had been "active efforts . . . made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that [those] efforts [had] proved unsuccessful." 25 U.S.C. sec. 1912(d). To satisfy the requirements of the Wisconsin children's code, the circuit court then required that the jury be convinced by clear and convincing evidence that R.A.C.P. had abandoned D.S.P. under sec. 48.415(1)(a)2, Stats.; that each parent had abandoned D.S.P. under sec. 48.415(1)(a)3, Stats.; and that each parent was unfit to be the parent of D.S.P. These jury findings fulfill the burden of proof requirements of both the ICWA and the Wisconsin children's code.

The second issue is whether two Indian social workers were "qualified expert witnesses" as required by 25 U.S.C. sec. 1912(f), in light of the requirement in sec. 48.31(4), Stats., that a licensed physician specializing in psychiatry or a licensed psychologist testify as to emotional damage in CHIPS proceedings. This issue is a matter resting in the sound discretion of the circuit court. Both parents argue that sec. 48.31(4)'s requirements apply to this termination of parental rights proceeding because the expert witnesses had to testify, as required by sec. 1912(f) of the ICWA, as to the likelihood of emotional damage. Both parents also argue that the social workers were not qualified to testify as to emotional damage. We do not agree with the parents' arguments.

---

the issue is not presented by this review, we decline to decide whether a unanimous verdict was necessary.

██

Section 48.31(4), Stats., applies only to CHIPS proceedings. Section 48.31(4) does not apply to termination of parental rights proceedings under sec. 48.415(1), such as the case at bar. Although the ICWA commands the use of state law rather than the ICWA if the state law "provides a higher standard of protection" than that accorded by the ICWA, *see* 25 U.S.C. sec. 1921, we do not interpret the ICWA to require that Wisconsin courts apply evidentiary requirements from CHIPS statute sections to termination of parental rights proceedings under sec. 48.415(1).

In response to the parents' argument that the social workers were not qualified to testify to emotional damage, we note that the ICWA does not require the testimony of licensed physicians or psychologists. If the Congress had meant to require the testimony of licensed physicians or psychologists, it could easily have done so. Instead, sec. 1912(f) of the ICWA requires the testimony of "qualified expert witnesses" as to the likelihood of emotional damage. However, the ICWA does not define what qualifications a person must possess in order to be "qualified" as an expert witness.

██

Although the ICWA does not define qualified expert witness, a House Report prepared in conjunction with the ICWA states that the phrase " 'qualified expert witness' is meant to apply to expertise beyond the normal social worker qualifications." H.R. Rep. No. 95–1386, 95th Cong., 2d Sess., *reprinted in* 6 U.S.C.C.A.N. 7530, 7545 (1978). In addition, the Department of Interior, Bureau of Indian Affairs, has promulgated "Guidelines for State Courts" which interpret the ICWA. Those guidelines include the following:

D.4. Qualified Expert Witnesses

(a) Removal of an Indian child from his or her family must be based on competent testimony from one or more experts qualified to speak specifically to the issue of whether continued custody by the parents or Indian custodians is likely to result in serious physical or emotional damage to the child.

(b) Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings:

(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.

(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

(iii) A professional person having substantial education and experience in the area of his or her specialty.

44 Fed. Reg. 67593 (1979). While the above guidelines are not by themselves binding upon courts, we find that they are helpful and should be considered when deciding whether a witness is a qualified expert under the ICWA.

Both parents argue that two of the witnesses presented by the state, Frances Kokko and Martha Snyder, were not qualified expert witnesses. Frances Kokko's testimony revealed that she possesses the following degrees: an Associate of Arts in child development, a Bachelor of Science in human services, and a Master's in social work. She is a full-blooded Chippewa Indian and has reared three children in the tribal tradition. At the time of the trial here, Ms. Kokko testified

she had approximately 14 years' experience in the social work field and is certified as a social worker by the state of Michigan.

The other expert witness objected to, Martha Snyder, testified that she also was certified as a social worker by the state of Michigan and had been involved in the field of social work since 1974. Ms. Snyder has a bachelor's degree from Northern Michigan University. Ms. Snyder is a member of the tribe, was reared in the tribal tradition, and has reared eight children in the tribal tradition. She testified that she was involved in implementing one of the first Indian child placement agencies in the United States—the Michigan Child Welfare Agency—and was chairman of the board of that agency for three years. Ms. Snyder testified that she helped develop the tribe's Indian outreach program which started in her dining room and now has a Tribal Center with 38 units of housing in her area. She went on to testify that she was one of the drafters of the ICWA at the federal level. Under the above guidelines, we conclude that the circuit court did not abuse its discretion when it determined that both Ms. Kokko and Ms. Snyder were qualified expert witnesses within the meaning of the ICWA.[6]

---

[6]Ms. Kokko has also been found to be a qualified expert witness under the ICWA by a Michigan court of appeals. *See Matter of Kreft,* 148 Mich. App. 682, 690, 384 N.W.2d 843, 847 (1986). For other decisions discussing the issue of qualified expert witnesses under the ICWA, see *Matter of Welfare of T.J.J.,* 366 N.W.2d 651 (Minn. Ct. App. 1985); *Matter of M.E.M.,* 195 Mont. 329, 635 P.2d 1313 (1981); *Matter of N.L.,* 754 P.2d 863 (Okla. 1988); *State ex rel. Juv. Dept v. Cooke,* 88 Or. App. 176, 744 P.2d 596 (1987); *People in Interest of J.J.,* 454 N.W.2d 317 (S.D.

The third issue is whether the testimony of the witnesses supported a determination, as required by 25 U.S.C. sec. 1912(f), "that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." We give the circuit court's decision on this issue some weight. R.A.C.P. argues that the testimony of the experts did not support the jury's determination and was inappropriately directed because the experts did not testify to whether continued custody by the parents would harm D.S.P., but rather the experts testified to whether D.S.P. would suffer harm if removed from his current foster placement and returned to his parents. We do not agree and hold that the witnesses' testimony supported the jury's determination.

In this case, the parents did not have physical custody of D.S.P. at the time of the trial. The ICWA requires a determination "that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." 25 U.S.C. sec. 1912(f). When the child is not in the custody of the parents for a protracted period of time, as in this case, it would be irrelevant to receive testimony as to whether or not the continued custody of the child by the parents will harm the child. Therefore, testimony as to what effect returning the child to the custody of the parents will have upon the child is probative of whether the continued custody of the child by the parents is likely to result in harm to the child.

Here, Ms. Snyder testified that the custody of D.S.P. by either of the parents would result in definite

1990); *Matter of K.A.B.E.,* 325 N.W.2d 840 (S.D. 1982); and *In re Welfare of Fisher,* 31 Wash. App. 550, 643 P.2d 887 (1982).

emotional damage and possibly serious physical harm to D.S.P. Ms. Snyder also testified that it would be a "traumatic experience" for D.S.P. to be returned to the custody of I.P. and R.A.C.P. We agree with the circuit court's findings, and we hold that in this case, such testimony supported the jury's determination.

*By the Court.*—The decision of the court of appeals is affirmed.