In re the Termination of Parental Rights to Arianna R.G., a Person Under the Age of 18:

Sheboygan County Department of Human Services, Petitioner-Respondent,

v.

Neal J.G., Respondent-Appellant.

In re the Termination of Parental Rights to Hunter D.G., a Person Under the Age of 18:

Sheboygan County Department of Human Services, Petitioner-Respondent,

v.

Neal J.G., Respondent-Appellant.

Supreme Court

*Nos. 02–0574, 02–0575. Oral argument November 7, 2002.— Decided March 5, 2003.*

2003 WI 11

(Also reported in 657 N.W.2d 363.)

564

For the respondent-appellant there were briefs (in the court of appeals) by *Timothy A. Provis*, Madison, and oral argument by *Timothy A. Provis*.

For the petitioner-respondent there was a brief (in the court of appeals) by *Mary T. Wagner*, assistant district attorney, and *Robert J. Wells, Jr.*, district attorney, and oral argument by *Mary T. Wagner*.

¶ 1. ANN WALSH BRADLEY, J. This case comes before us on a petition to bypass the court of

appeals pursuant to Wis. Stat. (Rule) § 809.60 (1999–2000). Neal J.G. (Neal) appeals an order of the Sheboygan County circuit court terminating his parental rights to his two children.[1] He claims that the circuit court erred in failing to comply with the notice requirement of the Indian Child Welfare Act (ICWA).[2]

¶ 2. We conclude that the information before the circuit court was too vague for the court to have reason to know that each of Neal's children met the definition of "Indian child" under the ICWA. Because the information was insufficient to show that the ICWA applied in this case, no notice was required. Accordingly, albeit with different rationale, we affirm the order of the circuit court terminating Neal's parental rights to his children.

I

¶ 3. The Sheboygan County Department of Health and Human Services (the department) filed petitions with the Sheboygan County circuit court to terminate involuntarily Neal's parental rights to his two children. On July 23, 2001, Neal filed a motion with the circuit court requesting that either (a) the proceedings be dismissed because of the department's failure to comply with the ICWA or (b) the proceedings be suspended in order to comply with the ICWA by "providing notice of the proceedings to the Ojibwa Tribe in Marinette, Wisconsin." The motion stated that the children had an Indian ancestry:

---

[1] Neal J.G. appeals from an order of the Circuit Court for Sheboygan County, John B. Murphy, Judge.

[2] Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901–1963 (2002).

[Neal] asserts that he has Indian heritage, both on his mother's side of the family and his father's side of the family. Specifically, [Neal's mother] is aware that her Indian ancestry stems from the Ojibwa Tribe in Marinette, Wisconsin. [The children's great-great-grandmother] is/was a member of the Ojibwa Tribe.

¶ 4. At a hearing on August 3, 2001, the circuit court addressed this motion. The court initiated further inquiry and requested that Neal's mother provide additional details regarding the children's heritage that might indicate that they were eligible for any tribal membership.

¶ 5. By letter dated August 3, 2001, the assistant district attorney of Sheboygan County sent a notice to the U.S. Department of the Interior describing the possible Indian child status of the children. The letter noted information apparently obtained as a result of the additional inquiry requested by the circuit court. It stated that the children's grandmother indicated that her grandmother was born on an Indian reservation somewhere in Canada around 1880 and later moved to Marinette, Wisconsin. Neal's motion was attached to the letter.

¶ 6. The acting director of the Office of Tribal Services responded with a letter dated August 22, 2001, explaining that the information was insufficient to make a determination regarding the Indian child status of the children:

> We are unable to determine Indian ancestry due to insufficient information on tribal affiliation. The Bureau of Indian Affairs does not maintain comprehensive list [sic] of persons possessing Indian blood. This kind of information can be obtained from the Tribe itself, if tribal affiliation can be determined.

. . . Pursuant to the [ICWA], it is incumbent upon the agency responsible for the action such as child custody proceedings involving Indian children to notify the appropriate tribe(s) directly of their right to intervene in proceedings involving their tribal children. Accordingly, if additional information on tribal affiliation becomes available . . . you are advised to notify the appropriate tribe(s) directly of their right to intervene in the above proceedings.

¶ 7. On September 14, 2001, Neal filed a motion that "the prosecution be compelled to provide notice of these proceedings to the Ojibwa Tribe in Marinette, Wisconsin, as previously and specifically requested, in compliance with the Indian Child Welfare Act." At a hearing on September 20, 2001, the following discussion occurred:

THE COURT: . . . Item number 2 then is notice to the Ojibwa Tribe in Marinette, Wisconsin, under the Indian Child Welfare Act. Attorney Spoerl, on that issue?

ATTORNEY SPOERL: This was a follow-up to a motion that I filed or that was heard last time we were in court. After that motion hearing, my client's mother went down to the District Attorney's Office and provided, I believe, as much information as she had concerning the tribal connection that she has through her family.

Specifically, in my earlier motion, I mentioned the Ojibwa Tribe in Marinette, Wisconsin. I'm sure my client's mother explained why she believed that the Ojibwa Tribe was a connection . . .

For some reason, notice was not sent specifically to the Ojibwa Tribe in Marinette. I don't know why.

THE COURT: Mr. Van Akkeren, on notice to the Ojibwa Tribe?

ATTORNEY VAN AKKEREN: Your honor, to my knowledge, there is no Ojibwa Tribe in Marinette, Wisconsin. One of the — I provided to the Court the letter we sent to the Secretary of the Interior, and I provided the Court the response.

An additional effort to try to find an Ojibwa Tribe in Marinette, Wisconsin, I searched the internet for any reference to them. Ms. Erdmier contacted the Bureau of Indian Affairs, the local office in Fort Snelling, Minnesota. They do not list any Ojibwa Tribe in Marinette, Wisconsin.

I reviewed a juvenile court handbook which I use which discusses the various, juvenile court handbook concerning Wisconsin, lists Indian tribes within Wisconsin, and there is no Ojibwa Tribe listed in Marinette, Wisconsin. We have no way of notifying any Ojibwa Tribe in Marinette, Wisconsin.

THE COURT: I don't know either. I'm fairly familiar with Marinette, Wisconsin, having some property in Marinette County. There certainly are Chippewas, which is another name for the Ojibwa.[3] It's the more anglicized name in Wisconsin, obviously, at various observations [sic] of Red Cliff and other places. I certainly don't know of any in Marinette. If the Bureau of Indian Affairs knows of none, I guess there won't be any.

ATTORNEY VAN AKKEREN: I searched under Chippewa because I knew that was the anglicized version.

---

[3] The terms "Ojibwa" and "Chippewa" are synonymous. *See The American Heritage Dictionary of the English Language* 334, 1258 (3d ed. 1992).

. . . .

THE COURT: . . . Based on the sketchy information provided by [Neal's] mom, I don't think the Department or Public is in any position to do anything further than it has done. I'm satisfied that under the circumstances the provisions of the Indian Child Welfare Act have been met.

¶ 8. A jury returned a verdict finding grounds to terminate Neal's parental rights and the circuit court ordered Neal's parental rights terminated. Neal appealed on the issue of compliance with the notice requirement in 25 U.S.C. § 1912(a). He asserted that notice should have been sent to the six Chippewa tribes in Wisconsin listed by the Bureau of Indian Affairs as Indian tribes recognized to receive services from the Secretary of the Interior.[4] This court granted the department's petition to bypass the court of appeals pursuant to Wis. Stat. (Rule) § 809.60 (1999–2000).

II

¶ 9. This case provides us with an opportunity to review when and under what circumstances a court has reason to know that a child involved in a termination of parental rights proceeding is an "Indian child" under the ICWA thereby triggering the notice requirement.

---

[4] The Bureau of Indian Affairs' list of Indian tribes recognized and eligible to receive services contains sixteen tribes with "Chippewa" in the tribal name — six in Wisconsin, six in Michigan, two in Minnesota, one in North Dakota and one in Montana. 67 Fed.Reg. 46328 (July 11, 2002). At the time of the circuit court's action in this case, the then current list contained the same "Chippewa" tribes. 65 Fed.Reg. 13298 (March 13, 2000).

This issue is essentially one of statutory interpretation which presents a question of law subject to independent appellate review. *In re D.S.P.,* 166 Wis. 2d 464, 471, 480 N.W.2d 234 (1992). In reaching our determination, we first briefly discuss the background and objectives of the ICWA. We then analyze the notice requirement of 25 U.S.C. § 1912(a). Finally, we apply our analysis of the notice requirement to the circuit court proceedings and conclude that the information before the circuit court was too vague for the court to have reason to know that each of Neal's children met the definition of "Indian child" under the ICWA. Because the information was insufficient to show that the ICWA applied in this case, no notice was required.

## III

¶ 10. An understanding of the background and objectives of the ICWA is essential to our analysis. The ICWA was enacted in 1978 in response to mounting evidence of abusive child welfare practices that were separating large numbers of Indian children from their families and tribes through adoption or foster care placement, usually to non-Indian homes. *See Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 32 (1989) (detailing background to the ICWA). In describing the state of affairs that led to the ICWA, a House Report noted that the "wholesale separation of Indian children from their families is perhaps the most tragic and destructive aspect of American Indian life today" and the "disparity in placement rates for Indians and non-Indians is shocking." H.R. Rep. No. 95–1386 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7530, 7531.

¶ 11. The Congressional findings in the ICWA recognized that: (a) Indian children are essential to the continued existence and integrity of Indian tribes, (b)

Indian families are often broken up by the unwarranted removal of children with an alarmingly high percentage of these children being placed in non-Indian foster and adoptive homes and institutions, and (c) state agencies and judicial bodies often fail to recognize the essential tribal relations of Indian people and the cultural and social standards of Indian communities and families.[5]

¶ 12. Consistent with the Congressional findings, the ICWA declares a policy of protecting the best interests of Indian children and promoting the stability and security of Indian tribes and families:

> The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.[6]

¶ 13. The U.S. Department of the Interior's Bureau of Indian Affairs has issued guidelines to state courts to further compliance with the ICWA (Guidelines).[7] The Guidelines do not have binding effect,[8] but courts generally consider them to be helpful in inter-

---

[5] 25 U.S.C. § 1901.

[6] *Id.* § 1902.

[7] *Guidelines for State Courts; Indian Child Custody Proceedings,* Department of Interior, Bureau of Indian Affairs (Guidelines), 44 Fed. Reg. 67584, 67586 (1979).

[8] *Id.* at 67584 (The Guidelines "are not intended to have binding legislative effect." State courts "are free to act contrary to what the Department has said if they are convinced that the Department guidelines are not required by the statute itself.").

preting the ICWA. *In re D.S.P.,* 166 Wis. 2d at 477; *Brown Co. v. Marcella G.,* 2001 WI App 194, ¶ 8, 247 Wis. 2d 158, 634 N.W.2d 140. According to the Guidelines, the ICWA expresses a "clear preference for keeping Indian children with their families, deferring to tribal judgment on matters concerning the custody of tribal children, and placing Indian children who must be removed from their homes within their own families or Indian tribes."[9] The Guidelines state that the ICWA and the Guidelines "shall be liberally construed in favor of a result that is consistent with these preferences."[10]

## IV

¶ 14. The ICWA contains procedural and substantive provisions for involuntary child custody proceedings when an "Indian child" is involved. Among the procedural provisions is the notice requirement in 25 U.S.C. § 1912(a) which provides that in "any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the proceedings and of their right of intervention."

¶ 15. One of the purposes of the notice requirement is to enable an Indian tribe to participate in determining whether the child involved in the proceeding is an "Indian child." *See In re Jeffrey A.,* 127 Cal.

---

[9] *Id.* at 67585–67586.
[10] *Id.* at 67586.

Rptr. 2d 314, 317 (Cal.App. 2002).[11] A tribe cannot participate in determining tribal membership unless the tribe is aware of the proceeding. The notice requirement recognizes that Indian tribes have an interest in Indian child welfare proceedings apart from the parties and that the information supplied by the parties regarding the "Indian child" status of the child may be incomplete. *In re M.C.P.*, 571 A.2d 627, 633 (Vt. 1989). Thus, the ICWA creates the notice requirement and uses the "reason to know" threshold as the basis for when notice is required.

¶ 16. The threshold is satisfied when the court has "reason to know" that the child is an "Indian child" — a term defined by the ICWA as meaning something more specific than merely having Native American ancestors. The ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Both definitions of an "Indian child" require analysis of a person's membership in an "Indian tribe" — another term defined by the ICWA. "Indian tribe" means "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the

---

[11] *See* Guidelines, 44 Fed. Reg. at 67586 ("[T]he best source of information on whether a particular child is Indian is the tribe itself. It is the tribe's prerogative to determine membership criteria and to decide who meets those criteria."); *Felix S. Cohen's Handbook of Federal Indian Law* 20 (R. Strickland et al. eds., 1982 ed.) ("The courts have consistently recognized that one of an Indian tribe's most basic powers is the authority to determine questions of its own membership.").

Secretary [of the Interior] because of their status as Indians . . . ." *Id.* § 1903(8). Therefore, the analysis involves determining whether the applicable tribe is eligible for services provided by the U.S. Secretary of the Interior. *See In re J.T. and C.T.,* 693 A.2d 283, 289 (Vt. 1997).

¶ 17. When dealing with an unidentified tribe, it is difficult to make assumptions regarding whether a person is likely to be a member of the tribe because tribes use a wide range of membership criteria.[12] For example, many tribes require a person to register or enroll in order to be considered a member of the tribe, but some do not and automatically include a person as a member if the person is descended from a tribal member who was listed on the tribal rolls as of a specific date.[13] Accordingly, the absence of enrollment alone

[12] *See* American Indian Policy Review Comm'n, 95th Cong., 1st Sess. Final Report 108–109 (Comm. Print 1977) ("Many tribal provisions call for one-fourth degree of blood of the particular tribe but tribal provisions vary widely. A few tribes require as much as one-half degree of tribal blood and a small number permit any descendant of a tribal member to be enrolled, regardless of blood quantum."). *See also Felix S. Cohen's Handbook of Federal Indian Law* at 22–23.

[13] *See U.S. v. Broncheau,* 597 F.2d 1260, 1263 (1979) ("Enrollment is the common evidentiary standard for establishing Indian status, but it is not the only means nor is it necessarily determinative."). Examples of Chippewa tribal provisions that require registration or enrollment include: (a) Article II, Section 1 of the Constitution and Bylaws of the Red Cliff Band of Lake Superior Chippewa Indians in the State of Wisconsin, *at* http://www.narf.org/nill/Constitutions/RedCliffConst/redcliffconsttoc.htm (December 2, 2002); (b) Article II, Section 1 of the Constitution of the Grand Traverse Band of Ottawa and Chippewa Indians of Michigan, *at* http://thorpe.ou.edu/consitution/GTBcons3.html (De-

may not necessarily be determinative of whether a person is a member of a tribe.

¶ 18. The issue then becomes when and under what circumstances does a court have "reason to know" that a child is an "Indian child" under the ICWA. The Guidelines are helpful in addressing this issue.[14]

¶ 19. According to the Guidelines, in "any involuntary child custody proceeding, a state court shall make inquiries to determine if the child involved is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe."[15] After such inquiry, if "a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe."[16]

---

cember 2, 2001); and (c) Article II, Section 1 of the Revised Constitution and Bylaws of the Minnesota Chippewa Tribe, *at* http://thorpe.ou.edu/constitution/chippewa/index.html (December 2, 2002). An example of a Chippewa tribal provision that does not require registration or enrollment is Article II, Section 1(b) of the Constitution and Bylaws of the Turtle Mountain Band of Chippewa Indians of Belcourt, North Dakota, *at* http://thorpe.ou.edu/constitution/Turtlemtn/TMconst.html (December 2, 2002) (defining tribal membership to include all "descendants of persons whose names appear on the [tribe's 1943 roll], provided that such descendants possess one-fourth or more Indian blood, and provided further that such descendants are not domiciled in Canada.").

[14] *See In re D.S.P.*, 166 Wis. 2d 464, 477, 480 N.W.2d 234 (1992) ("While the [Guidelines] are not themselves binding upon courts, we find that they are helpful and should be considered when deciding whether a witness is a qualified expert under the ICWA.").

[15] Guidelines, 44 Fed. Reg. at 67588.

[16] *Id.* at 67586.

¶ 20. The Guidelines describe the following circumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian child:

> (i) Any party to the case, Indian tribe, Indian organization or public or private agency informs the court that the child is an Indian child.

> (ii) Any public or state-licensed agency involved in child protection services or family support had discovered information which suggests that the child is an Indian child.

> (iii) The child who is the subject of the proceeding gives the court reason to believe he or she is an Indian child.

> (iv) The residence or domicile of the child, his or her biological parents, or the Indian custodian is known by the court to be or is shown to be a predominantly Indian community.

> (v) An officer of the court involved in the proceeding has knowledge that the child may be an Indian child.[17]

██

¶ 21. In this case, circumstance (v) of the Guidelines arguably is implicated because Neal's attorney, an officer of the court, asserted that the children have Indian ancestry. Neal claims that his children may be Indian children. However, as we discuss below, we conclude that the information available to the court

---

[17] *Id.*

was too vague for the court to have reason to know that each of Neal's children is an "Indian child" as defined by the ICWA.[18]

## V

¶ 22. Although the ICWA provides broad protections, there are limits to its applicability. Before the notice requirement of the ICWA can be invoked, the circuit court must first determine if it has reason to know the child is an "Indian child" as defined by the ICWA.

¶ 23. As noted above, the ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Additionally, a tribe is defined as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians . . . ." *Id.* § 1903(8).

¶ 24. Neal has never asserted that the children are members of a federally recognized tribe or that they are eligible for membership in a federally recognized tribe and are biological children of a tribe member. He has never stated that he has tribal membership.

¶ 25. Rather, the record establishes that at the first motion hearing Neal averred that his children have "Indian heritage" and asserted that through the

---

[18] We note that the ICWA uses the phrase "reason to know" and the Guidelines, without explanation, use the phrase "reason to believe." Because the Guidelines are not binding, we use the phraseology of the ICWA.

children's great-great-grandmother their "ancestry stems from the Ojibwa Tribe in Marinette, Wisconsin." The court initiated further inquiry in an attempt to identify and clarify tribal membership.

¶ 26. Additional information obtained from the children's grandmother indicates that her grandmother was born on an unspecified Indian reservation somewhere in Canada around 1880, and that she later moved to Wisconsin. She did not claim that her grandmother had been a member of a federally recognized tribe while in Canada or that she retained or sought tribal membership while in Wisconsin.

¶ 27. The record reflects that the assistant district attorney sent a letter to the Department of the Interior containing all of the known information regarding the children's Native American ancestry. The Department of the Interior responded that it was "unable to determine Indian ancestry due to insufficient information on tribal affiliation. . . . Accordingly, if additional information on tribal affiliation becomes available . . . you are advised to notify the appropriate tribe(s) directly of their right to intervene in the above proceedings."

¶ 28. At the second motion hearing, Neal's attorney informed the circuit court that the children's grandmother provided the District Attorney's office with "as much information as she had concerning the tribal connection." The assistant district attorney advised the court that in addition to sending a letter to the Department of the Interior, other attempts were made to locate an Ojibwa Tribe in Marinette, Wisconsin. The local office of the Bureau of Indian Affairs was contacted and it did not have any listing of an Ojibwa Tribe in Marinette. A juvenile court handbook was reviewed which lists Indian tribes within Wisconsin, and there

was no Ojibwa Tribe listed in Marinette. Finally, a search of the internet was conducted for any reference to an Ojibwa tribe in Marinette. None was found. The assistant district attorney stated that the search was also done for a Chippewa tribe in Marinette because he "knew that was the anglicized version." They were unable to locate a Chippewa tribe in Marinette.

¶ 29. The circuit court echoed the Department of the Interior's conclusion that the information was "insufficient." The court concluded that the information was too "sketchy" to require further notice under the ICWA and that under these circumstances the notification provisions of the ICWA had been met. Like the Department of the Interior and the circuit court, we also find the information in this case to be inadequate. However, unlike the circuit court, we determine that because the information was insufficient to show that the ICWA notice provisions even applied in this case, no notice was required.

¶ 30. Our conclusion is supported by decisions of other courts that have wrestled with this issue. In *In re A.L. and J.L.*, 623 N.W.2d 418 (N.D. 2001), the North Dakota Supreme Court held that information that children may be American Indian was insufficient to invoke the ICWA. The court noted the dearth of information available to the lower court in assessing whether the children met the definition of an "Indian child" under the ICWA. It concluded that "(n)othing in this record suggests the children were members of an Indian tribe, or eligible for membership in an Indian tribe, and counsel's unsupported and vague statements were insufficient to suggest 'Indian child' status." *Id.* at 422.

¶ 31. Likewise, in *In re Johanson*, 402 N.W.2d 13 (Mich.App. 1987), the court emphasized that the ICWA

requires an initial determination regarding the Indian child status of the child. The court noted that nothing in the record indicated that the trial court knew or should have known that the child was an Indian child. Although the record contained references to the Saginaw Tribe of Chippewa Indians, it appeared those references concerned the fact that at one time the mother rented a home on the Chippewa reservation. She readily acknowledged that she was not a member of the tribe and that at one time she unsuccessfully attempted to obtain membership. The court stated that just because the child may have Indian heritage does not qualify him as an Indian child as defined by the ICWA. The court concluded that the trial court did not know and had no reason to know that the child was an Indian child. *Id.* at 16.

¶ 32. In *In re Guardianship of J.O.*, 743 A.2d 341 (N.J.Super. 2000), the New Jersey appeals court found that an amorphous statement of possible Indian ancestry made by the mother's attorney provided insufficient information to trigger the application of the ICWA. Citing to 25 C.F.R. § 23.11(d) (1994), the court noted that the regulation requires that the notice contain, in part, the name of the Indian tribe in which the child is enrolled or may be eligible for enrollment, and the names and addresses of the Indian child's parents, grandparents, and great-grandparents, together with their birthdates, places of birth and death, and tribal affiliation numbers. Not even a small fraction of the requested information had been provided and the family's background did not suggest Indian heritage. *Id.* at 347. As a result, the court concluded that "vague and casual reference to Indian ancestry made by [the mother's counsel] was insufficient to trigger the Act's notice requirement." *Id.*

¶ 33. We acknowledge that other courts struggling with this issue have concluded that the information before them was sufficient to trigger the notice requirement. However, the assertions in those cases provided more specific information and reason to know that the children met the definition of "Indian child" under the ICWA or focused on what constitutes sufficient notice. For example, in *In re Colnar*, 757 P.2d 534 (Wash.App. 1988), the mother alleged that she was one-quarter Apache, claiming that made her eligible for membership in an Indian tribe. The Department of Social and Health Services contacted the Apache Nation for the purposes of researching the bloodline of the mother's maternal grandmother. The case worker asked specific questions about the mother, her mother and grandmother and then filed an affidavit indicating that the child was not qualified to be enrolled in a tribe. Relying on the affidavit, the trial court found that the ICWA did not apply. The appellate court remanded the case concluding that the contact by the social worker did not constitute proper notice and that the State thus failed to give notice to the Apache tribe or the Bureau of Indian Affairs as required under the ICWA.

¶ 34. Similarly in *In re Junious,* 144 Cal.App.3d 786 (1983), the California appellate court concluded that notice was required. There, the initial evidence before the trial court indicated that the child was potentially affiliated with an Indian tribe in Canada through the child's great-grandfather. However, later inquiry revealed that the tribe was in fact an American tribe. It was undisputed that the mother's mother was an enrolled member of the Nooksack tribe. It was also undisputed that the mother had one-half degree Indian blood. The mother interpreted the relevant Nooksack constitutional provisions to grant membership if she

582

was born to an enrolled member who has one-half degree Indian blood. The Department of Social Services countered with a different interpretation of the provisions arguing that membership does not automatically follow from eligibility. The trial court accepted the interpretation of the department and concluded that the ICWA was not applicable since the child was not an "Indian child."

¶ 35. The appellate court determined that the trial court erred in approaching resolution of the issue in this manner. It noted that "the statutory definition of Indian child, taken together with the Nooksack constitutional provisions, resulted in an ambiguity which was not easily resolved." *Id.* at 796. It concluded that it was for the tribe to resolve any ambiguity regarding membership and that notice to the tribe should have been provided. Unlike the unidentified Ojibwa tribe in the case before us, *Junious* involved a tribe that had been specifically identified, could be located, and was clearly an "Indian tribe" under the ICWA.

¶ 36. As the above cases illustrate, courts which have struggled with determining when information is sufficient to trigger the provisions of the ICWA have reached differing conclusions. All of the cases recognize the importance of advancing the objectives of the ICWA. The decisions in the cases tend to be fact sensitive. Our facts are more akin to those which have concluded that the information before the court was insufficient to show that the ICWA applied.

¶ 37. We acknowledge that the circuit court applied a different analysis in addressing compliance with the notice requirement of 25 U.S.C. § 1912(a). The circuit court terminated the parental rights and determined that the notice requirements of the ICWA had

been met. We determine that there was insufficient information before the court to apply the ICWA and trigger its notice provisions. However, we will not reverse a circuit court's order if the facts of the record applied to the proper legal standard support the circuit court's ultimate determination. *In re Paternity of Stephanie R.N.*, 174 Wis. 2d 745, 767, 498 N.W.2d 235 (1993).

¶ 38. We compliment the circuit court in proceeding with caution and giving notice to the Secretary of the Interior even when the paucity of information before the court was insufficient to invoke the ICWA. We likewise urge other circuit courts to proceed with caution and to initiate further inquiry when confronted with vague assertions of Indian heritage. Proceeding with caution and initiating further inquiry advance the ICWA's key objectives of protecting the best interests of Indian children and promoting the security, survival, and stability of Indian families and tribes. The importance of these objectives is undeniable. Accordingly, courts must make every effort to ensure compliance with the ICWA, including ensuring that Indian tribes are properly notified.

¶ 39. In sum, we affirm the order of the circuit court because we conclude that the information before the circuit court was too vague for the court to have reason to know that each of Neal's children met the definition of Indian child under the ICWA. Because the information was insufficient to show that the ICWA applied in this case, no notice was required. Accordingly, but with different rationale, we affirm the order of the circuit court terminating Neal's parental rights to his children.

*By the Court.*—The order of the circuit court is affirmed.

¶ 40. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* I disagree with the majority opinion's conclusion that the information before the circuit court was insufficient to trigger the notice requirements of the Indian Child Welfare Act (ICWA). I conclude, as did the circuit court, that the limited information at the circuit court's disposal gave it reason to know that an Indian child might be involved and that notice was therefore required under the ICWA.

¶ 41. I join the majority opinion in urging circuit courts "to proceed with caution and to initiate further inquiry when confronted with vague assertions of Indian heritage."[1] I write because I believe the majority opinion undermines this caution and the objectives of the ICWA by concluding that the vague assertions in the present case did not trigger the ICWA.

¶ 42. The statutorily required notice is designed to enable a tribe to determine whether the child involved in the proceeding is an "Indian child" and whether the tribe should intervene in the proceedings. Without notice, a tribe has no opportunity to intervene. The consequences of lack of notice are serious: the proceedings may be invalid.[2]

¶ 43. In the present case the circuit court should be commended for its efforts. The circuit court properly concluded that there was reason to know that an Indian child might be involved in the proceeding and that notice was required. The harder question is whether reasonable effort was made to identify and notify the appropriate tribe. I am reluctant to second-guess the circuit court that acted so responsibly in the present case. I am nevertheless convinced, in light of the

[1] Majority op., ¶ 38.

[2] 25 U.S.C. § 1914 (2001).

purpose of the ICWA, that a reasonable effort in the present case should have included notice to the list of Chippewa bands provided by the Bureau of Indian Affairs.

¶ 44. I would therefore remand the cause to the circuit court for furnishing additional notice. If after additional notice is given the circuit court determines that the ICWA does not apply, the original circuit court order terminating parental rights would stand.[3]

¶ 45. For the reasons set forth, I dissent.

---

[3] For courts providing such a remedy, see, *e.g., In re J.T.,* 693 A.2d 283, 289 (Vt. 1997), and *In re C.H.,* 510 N.W.2d 119, 124 (S.D. 1993).