In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00134-CV
______________________________


 
 
IN THE MATTER OF THE MARRIAGE OF
 
MELISSA BERG DINGLE-RINER AND
JERRELL TRACY RINER




                                              

On Appeal from the 199th Judicial District Court
Collin County, Texas
Trial Court No. 199-53166-02


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Jerrell Tracy Riner has filed a motion asking this Court to dismiss his appeal and
assess any costs incurred on appeal against the party incurring them. Pursuant to Tex. R.
App. P. 42.1(a)(1), his motion is granted.
          We dismiss the appeal.
 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      November 19, 2003
Date Decided:         November 20, 2003



.M.W., and C.A.W.,
were terminated by the trial court. The Waldrops raise five issues on appeal, each of which depends
on their assertion that the federal Indian Child Welfare Act (ICWA) applies to this case and,
therefore, imposes additional procedural and standard-of-proof requirements


 which were not met
in the trial court. See 25 U.S.C.A. § 1912 (West 2001). The Waldrops do not contest any of the
stated grounds for termination, but argue merely that the ICWA applies and was violated in the
process of terminating the Waldrops' parental rights to R.M.W., J.M.W., and C.A.W. Because the
record supports the conclusion that the ICWA does not apply to this case, we affirm.
            The threshold and dispositive issue in this case is raised in the Waldrops' first point of error
and is critical to the success of all points of error: Does the ICWA apply to this case, and did the
trial court have reason to know that the children subject to the underlying lawsuit were "Indian
children" as defined by the ICWA? We hold that the ICWA does not apply and additionally hold
that the trial court did not have reason to know the children were Indian children as defined by the
ICWA. The trial court, therefore, did not err by failing to apply the provisions of the ICWA. 
Accordingly, all of the Waldrops' points of error are overruled.
            Congress declared that the ICWA's purpose, among other things, is "to protect . . . Indian
children." 25 U.S.C.A. § 1902 (West 2001). Under the ICWA, an "Indian child" is an "unmarried
person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for
membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25
U.S.C.A. § 1903(4) (West 2001).
            While there is evidence—from Robin—that he and the three children have some Indian
blood, there is no evidence that Robin, Angela, or any of the three children are members of an Indian
tribe. That alone is fatal to the Waldrops' appeal because, as a result, none of the children have been
shown to come within the ICWA's definition of an Indian child. Therefore, the ICWA does not
apply. In addition, the trial court, therefore, could not know or have reason to know that they are
Indian children under the ICWA.
            The ICWA provides:
In any involuntary proceeding in a State court, where the court knows or has
reason to know that an Indian child is involved, the party seeking the foster care
placement of, or termination of parental rights to, an Indian child shall notify the
parent or Indian custodian and the Indian child's tribe, by registered mail with return
receipt requested, of the pending proceedings and of their right of intervention.

25 U.S.C.A. § 1912(a) (emphasis added). The ICWA applies to all state child custody proceedings
involving an Indian child when the court knows or has reason to know an Indian child is involved. 
See id.; see also Yavapai-Apache Tribe v. Mejia, 906 S.W.2d 152, 162 (Tex. App.—Houston [14th
Dist] 1995, orig. proceeding). Our review is, therefore, narrowly focused: Are these children Indian
children within the ICWA, and did the trial court know or have reason to know that they were Indian
children? We answer "no" to both questions.
            In the eleven volumes of the reporter's record and in the clerk's record, we find only three
brief suggestions that Robin may have been of Indian descent. There is no contention Angela is of
Indian descent.
            On May 26, 2004, Robin filed a motion for summary judgment. On the second page of that
motion, under heading 5(a), it states, "Robin Waldrop has raised the affirmative issue that he is of
Cherokee Indian heritage, but no response has been made to that." On June 18, 2004, Judge Ray
Grisham denied the motion for summary judgment. 
            The trial on the parental termination suit was conducted before Judge Don Jarvis. At that
trial, Crystal Wrape, a worker for Child Protective Services (CPS), was asked the following
questions by Angela's attorney:
Q.Are these children part Indian?
 
A.I'm sorry?
 
Q.Are the children, [R.M.W. and J.M.W.], part Indian? 
 
A.Well, Mr. Waldrop said that, you know, he did have Indian in him. 
We notified the tribe and the tribe did not take any action, so I don't know that they --
I don't believe they recognized them as having enough Indian in them.

            The next day, as the trial continued, Robin was asked the following questions by his own
attorney:
Q.Okay. Now, you've also told this Court prior to this time that you're
part Indian because your mom's part Indian.
 
A.Yes, sir.
 
Q.On her side of the family?
 
A.Yes, sir.
 
Q.And you've represented that to the Court. We've filed papers that
indicated that you were Indian?
 
A.Yes, sir.
 
                        Q.        Now, you remember when you first had the intake on this case as well
as the cases on [S.], do you recall anybody saying, by the way, do you have any
Indian blood in you?
 
A.No, sir.
 
Q.Nobody from CPS asked you that?
 
A.No.
 
Q.And it's your understanding that just because -- if notice was given to
the Indian Nation -- if it was given. And the Indian Nation chose not to take
jurisdiction of this, that doesn't settle the problem -- the question of whether, in fact,
you do have Indian blood. That doesn't settle the question of your kids having Indian
blood?
 
A.Right.
            These are the only instances in the record before us where the issue of Indian heritage is
mentioned.
            Nowhere in the record is there any assertion or evidence that the children are members of an
Indian tribe, that the children are eligible for membership in an Indian tribe, or that either Robin or
Angela is a member of an Indian tribe. The record shows only that Robin may be of Cherokee Indian
heritage because his mother, who also may or may not be a member of an Indian tribe, is of Indian
heritage. The assertion that Robin is of Indian "heritage" or "blood" provides no evidence that any
of the children are Indian children under the ICWA, and, concomitantly, cannot put the trial court
on notice that any of the children are Indian children as narrowly defined by the ICWA.
            This case is distinguishable from other cases which have held the trial court did have reason
to know the child in question was an Indian child. See Doty-Jabbaar v. Dallas County Child
Protective Servs., 19 S.W.3d 870, 873–74 (Tex. App.—Dallas 2000, pet. denied). In Doty-Jabbaar,
the reviewing court found that Dallas County CPS admitted in court that the child was an Indian
child subject to the ICWA. The court also found that
the trial court accepted as true the fact that appellant and her child were potential
members of a tribe as evidenced by the decree of termination wherein the court
applied the ICWA standard of proof finding beyond a reasonable doubt that appellant
knowingly placed the child in conditions or surroundings which endangered the
physical and emotional well-being of the child and beyond a reasonable doubt that
the termination of the parent-child relationship was in the best interest of the child.

Id. at 874. The court held the trial court erred by failing to properly apply provisions of the ICWA
because it knew or had reason to know the child was an Indian child subject to the ICWA.
            Here, CPS did not admit that the children were Indian children subject to the ICWA. Rather,
the CPS worker acknowledged that Robin had said he had "Indian [blood] in him" and notified the
Indian tribe. Further, there is nothing in the trial court's order to suggest the court either explicitly
or implicitly accepted that either of the Waldrops or any of their three children was a member of an
Indian tribe. 
            When a child is enrolled as a member of an Indian tribe, the provisions of the ICWA must
be applied. In re W.D.H., 43 S.W.3d 30, 34 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). 
But here there is no evidence or suggestion that any member of the Waldrop family belongs to an
Indian tribe.
            Although there appear to be few Texas decisions that have reviewed when and under what
circumstances a trial court has "reason to know" that a child is an Indian child, our conclusion in this
case is supported by the analysis of courts in other jurisdictions that have tangled with this issue. 
The Wisconsin Supreme Court has held information before a lower court was too vague for the court
to have reason to know the children met the definition of Indian children under the ICWA. 
Shebougan County Dep't of Human Servs. v. Neal (In re Arianna R.G.), 657 N.W.2d 363, 364 (Wis.
2003). In that case, the parent contesting termination filed a motion stating, "[H]e has Indian
heritage, both on his mother's side of the family and his father's side of the family. Specifically, [his
mother] is aware that her Indian ancestry stems from the Ojibwa Tribe in Marinette, Wisconsin. 
[The children's great-great-grandmother] is/was a member of the Ojibwa Tribe." Id. The Wisconsin
Supreme Court found the parent in that case, as here, had never asserted that the children were
members of an Indian tribe or were eligible for membership in an Indian tribe or that the parent
himself was a member of an Indian tribe. Id. at 370. The Wisconsin court also found guidance on
the issue from other jurisdictions to be persuasive, which we too find helpful. Id. at 371–72.
            In Cleveland v. Dir., Cass County Soc. Servs. (In re A.L.), 623 N.W.2d 418 (N.D. 2001), the
North Dakota Supreme Court held that information asserting that children may be American Indian
was insufficient to invoke the ICWA. The court noted the dearth of information available to the
lower court in assessing whether the children met the definition of an Indian child under the ICWA. 
It concluded that "[n]othing in this record suggests the children were members of an Indian tribe, or
eligible for membership in an Indian tribe, and counsel's unsupported and vague statements were
insufficient to suggest 'Indian child' status." Id. at 422.
            Likewise, the Michigan Court of Appeals emphasized that the ICWA requires an initial
determination of whether the child in question is an Indian child. In re Johanson, 402 N.W.2d 13
(Mich. Ct. App. 1986). The court noted that nothing in the record indicated the trial court knew or
should have known that the child was an Indian child. Although the record contained references to
the Saginaw Tribe of Chippewa Indians, it appeared those references concerned the fact that, at one
time, the mother rented a home on the Chippewa reservation. She readily acknowledged that she
was not a member of the tribe and that, at one time, she unsuccessfully attempted to obtain
membership. The court stated that, just because the child may have Indian heritage, that heritage
does not qualify him or her as an Indian child as defined by the ICWA. The court concluded the trial
court did not know and had no reason to know that the child was an Indian child. Id. at 16.
            The New Jersey appeals court found that an amorphous statement of possible Indian ancestry
made by the mother's attorney provided insufficient information to trigger the application of the
ICWA. In re Guardianship of J.O., 743 A.2d 341 (N.J. Super. Ct. App. Div. 2000). The court
concluded that a "vague and casual reference to Indian ancestry made by [the mother's counsel] was
insufficient to trigger the Act's notice requirement." Id. at 347.
            We hold the information presented to the trial court was insufficient to show that any of the
three children in question was an Indian child or that the trial court had reason to know that they
were Indian children within the meaning of the ICWA. 
            Accordingly, we affirm the judgment terminating the parental rights of Robin and Angela
Waldrop.


                                                                        Josh R. Morriss, III
                                                                        Chief Justice
 
Date Submitted:          January 26, 2006
Date Decided:             March 10, 2006