Joyce DOTY–JABBAAR, Appellant,

v.

DALLAS COUNTY CHILD PROTEC-
TIVE SERVICES, Appellee.

No. 05–99–00986–CV.

Court of Appeals of Texas,
Dallas.

June 1, 2000.

Leora S. Olorunnisomo, Dallas, ad litem.

April E. Smith, Mesquite, Donna Santiago, Legal Services of North Texas, Dallas, for appellant.

Kenneth Jefferson Bray, Asst. Dist. Atty.,William T. (Bill) Hill, Jr., Michael D. Munden, Asst. Dist. Atty., Dallas, for appellee.

Before Justices WHITTINGTON, JAMES and O'NEILL.

## OPINION

TOM JAMES, Justice.

Joyce Doty–Jabbaar appeals a default judgment terminating her parental rights. She raises three issues in this appeal complaining the trial court abused its discretion by (1) failing to comply with the requirements of the Indian Child Welfare Act, (2) failing to appoint an attorney to represent her, and (3) granting a default judgment at the pre-trial conference without proper notice. Because we find the trial court failed to comply with the requirements of the Indian Child Welfare Act, we reverse and remand.

### BACKGROUND

Appellant gave birth to a baby girl on January 10, 1999. On the same day, Dallas County Child Protective Services (DCCPS) received notice that appellant tested positive for cocaine. Subsequent tests of the infant indicated the baby was exposed to cocaine in utero. The following day, DCCPS filed a petition for termination of parental rights, emergency care, and temporary managing conservatorship of the infant. On January 12, 1999, the trial court granted an ex parte order for emergency care and temporary custody, and DCCPS placed the infant in foster care. Appellant was served with citation in this suit on January 19, 1999.

On January 22, 1999, the trial court conducted a hearing on the petition for temporary conservatorship. We have no reporter's record from this hearing, but the trial court's docket sheet indicates appellant, the biological father, and the child's guardian ad litem were present.[1] Appellant was not represented by counsel at any time in the proceedings until the court appointed counsel for purposes of this appeal. Additionally, no written answer was ever filed in this case. The docket sheet notation regarding the January 22 hearing indicates the trial judge appointed DCCPS temporary managing conservator and appellant temporary possessory conservator. Relying on DCCPS's recommendations, the judge also ordered appellant to undergo a psychiatric evaluation, attend parenting classes, submit to random urinalysis, and participate in an outpatient drug treatment program. Appellant was granted weekly supervised visitation with the baby.

On March 10, 1999, the trial court conducted a review hearing. The biological father was present, but appellant was absent. Before the court was a status report prepared by a DCCPS caseworker. According to the status report, the parents had been complying with the department's service plan by attending and participating in parenting classes, appellant was regularly attending outpatient drug treatment until she became ill on February 22, 1999, and arrangements had been made for counseling and psychological evaluations. In this report, the caseworker stated, the "[p]arents are working their service plan and are cooperative .... [the biological father] is supportive of [appellant] and

1. Appellate counsel requested the court reporter to prepare a reporter's record for this appeal, but the record contains no transcript of the January 22 hearing. The family code requires a record be made during contested hearings in suits affecting the parent-child relationship, unless waived by the parties with the consent of the court. See TEX. FAM.

CODE ANN. § 105.003 (Vernon 1998); *Stubbs v. Stubbs,* 685 S.W.2d 643, 645 (Tex.1985) ("It is the responsibility of the trial judge to see that the court reporter performs this duty.") Because appellant has not raised this issue on appeal, we do not consider the propriety of the trial court's actions in this regard.

they want their baby returned to their care." The report further stated the DCCPS permanency plan was to place the infant with relatives, and permanency was expected to be achieved by December 31, 1999. DCCPS recommended the current court orders remain in effect and the case be set for a "long pre-trial so that attempts to place [the infant] with family members may be pursued."

The next review hearing was scheduled for Friday, May 14, 1999. The district attorney, a DCCPS representative, and the guardian ad litem were present. Both parents were absent. Because of the parents' absence, the State proceeded to prove-up the case and presented the testimony of the DCCPS caseworker. The caseworker testified she gave notice to appellant of the hearing when appellant was visiting with her baby on the Tuesday prior to the hearing. The caseworker further testified to the following facts: (1) the mother had previously had her rights to another child terminated; (2) both parents had a history of drug abuse; (3) some relatives had been contacted but none were able to take care of the infant; (4) appellant is a potential member of an Indian tribe, the tribe was notified in this case, as well as the previous termination case, but had not intervened; and (5) it was in the child's best interest to terminate the parental rights. On cross-examination by the guardian ad litem, the caseworker testified she informed appellant of the date and time of a "pretrial hearing" but she did not advise appellant there was the possibility of a prove-up on the termination petition. The caseworker further testified appellant completed the outpatient treatment program and her psychological evaluation. Appellant also attended all but one of the parenting classes and she attended one therapy session.

At the conclusion of the hearing, the trial judge made the following oral pronouncement:

The Court at this time finds the respondent mother and father have committed the conduct as defined by Section 161.001(d) and (e) of the Family Code. The father has not come forward and asserted any interested [sic] he has in and to the child. That termination of the parent-child relationship would be in the child's best interest. That the child would be exposed to serious physical and emotional damage if exposed to the mother.

The Department at this time should be appointed the permanent managing conservator.

A notice of appeal was filed on June 17, 1999, but the record contains no motion for new trial.[2] On July 28, 1999, the trial court entered an order on contest of indigence finding appellant could pursue this appeal as an indigent and may not be charged for costs.

## PRESERVATION OF ERROR

■ Procedurally, we must first address whether appellant has properly preserved error before we may consider the merits of her arguments. DCCPS argues appellant has failed to preserve error in this case because she did not file a motion for new trial and, thus, has not met the prerequisites to presenting a complaint for appellate review as required by rule 33 of the Texas Rules of Appellate Procedure. We reject DCCPS's argument. We have before us a sufficient record of the trial court proceedings for review, and the record indicates the trial court attempted to comply with the requirements of the Indian Child Welfare Act. We conclude, under these circumstances, that appellant may raise failure of the trial court to comply with the requirements of the Act for the first time on appeal.

2. The decree of termination was signed on May 18, 1999; thus, the June 17, 1999 notice

of appeal was timely. See TEX.R.APP. P. 26.1.

## INDIAN CHILD WELFARE ACT

■ Appellant complains of the trial court's failure to strictly and correctly apply the relevant provisions of the Indian Child Welfare Act (ICWA), 25 U.S.C.A. §§ 1901–1963 (West 1995). The ICWA was passed in response to "an alarmingly high percentage of Indian families" who are "broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies" and the "alarmingly high percentage of such children" who were being "placed in non-Indian foster and adoptive homes and institutions." *Id.* § 1901(4). The ICWA applies to all state child custody proceedings involving an Indian child when the court knows or has reason to know an Indian child is involved. *See id.* § 1912(a); *see also Yavapai–Apache Tribe v. Mejia*, 906 S.W.2d 152, 162 (Tex.App.-Houston [14th Dist] 1995, no writ). An "Indian child" is defined as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.A. § 1903(4).

■ DCCPS contends the ICWA does not apply because there is no evidence in the record establishing the child was an Indian child as defined by the Act. We disagree. At the prove-up hearing on the default judgment, DCCPS put on evidence of a prior termination case in which appellant's rights to another one of her children were terminated. The caseworker testified the tribe was notified in the prior proceeding, and again in this proceeding. Thus, it is apparent DCCPS acknowledged the child's status as an Indian child from the beginning of the proceedings in this case. Although the record indicates the tribe failed to intervene in this case, the trial court was nonetheless bound to apply the provisions of the ICWA when faced with evidence the mother was a member of an Indian tribe. *See id.* § 1912(a). Additionally, the caseworker testified she was aware that under the ICWA, the State has

a higher burden of proof and parental rights may not be terminated unless there is proof beyond a reasonable doubt. We conclude once DCCPS admitted in the trial court the child was an Indian child subject to the ICWA, the State became bound by the admission. *See A.B.M. v. M.H.*, 651 P.2d 1170, 1174 (Alaska 1982). Furthermore, the trial court accepted as true the fact that appellant and her child were potential members of a tribe as evidenced by the decree of termination wherein the court applied the ICWA standard of proof finding *beyond a reasonable doubt* that appellant knowingly placed the child in conditions or surroundings which endangered the physical and emotional well-being of the child and *beyond a reasonable doubt* that the termination of the parent-child relationship was in the best interest of the child.

Having concluded the ICWA applies, we next consider whether the trial court complied with the specific provisions of section 1912. The ICWA sets out minimum requirements with which a state court must comply before terminating parental rights in a case involving an Indian child. *See* 25 U.S.C.A. § 1912. Appellant contends the court violated three provisions of section 1912 by (1) failing to appoint counsel for an indigent parent, (2) failing to make a finding that remedial measures had been unsuccessful, and (3) failing to require testimony from a *qualified expert* that the continued custody of the child by appellant is likely to result in serious emotional or physical damage to the child.

### Section 1912(d) Remedial Services

Before an Indian parent's parental rights may be terminated, section 1912(d) requires:

**(d) Remedial services and rehabilitative programs; preventive measures.** Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide reme-

dial services and rehabilitative programs designed to prevent the breakup of the Indian family *and that these efforts have proven unsuccessful.*

*Id.* § 1912(d) (bold in original, italics added).

■ Before the court were two reports prepared by DCCPS. The first was the initial report to the court filed on January 21, 1999. This report contains information pertaining to the facts of a prior termination proceeding in which appellant's rights to another child were terminated, the current status of the infant's placement, and a recommended service plan. The DCCPS service plan included the following remedial measures: (1) drug treatment programs; (2) random urinalysis; (3) parenting classes; (4) individual counseling; (5) steady employment; (6) appropriate housing; and, (7) psychological evaluations. The report indicates appellant had already begun outpatient drug treatment, and arrangements were being made for the other services. The DCCPS recommendation was for temporary managing conservatorship to remain with the Texas Department of Protective and Regulatory Services, and appellant be allowed only supervised visitation.

A second report was filed with the trial court on March 9, 1999. In this report, DCCPS states the child had weekly visitations with her parents and:

> [c]ompliance has been maintained for the parents' plan of service in that they are currently attending and participating in parenting classes.... [Appellant] is enrolled in outpatient drug treatment and had been attending the classes on a fairly consistent basis, until 2/22/99 when she became sick ... [Appellant] plans to resume treatment. Counseling and psychological evaluations have been set up for the parents.

The report further states the DCCPS recommendation that "the current court orders remain in effect and this case be set for a long pre-trial so that attempts to place [the infant] with family members may be pursued."

At the prove-up of the default judgment, the State presented the testimony of only one witness, the DCCPS caseworker assigned to this case. She testified to the following:

Q. Are you satisfied that even if [appellant] was involved in drug treatment on a short term basis, at this point, that it would be in the child's best interest to terminate the rights as long term care would be needed for the mother.

A. Yes.

During cross-examination, the child's guardian ad litem elicited the following testimony from the same witness:

Q. Okay. Now, mom was given a service plan[,] is that right?

A. That is correct.

Q. And you and I have talked about her progress on the service plan; is that right?

A. Yes.

Q. What kind of progress has mom made on the service plan?

A. She completed the outpatient program at Nexus. She went to all but one of her parenting classes. She completed her psychological evaluation. And she went to one therapy appointment.

We have reviewed the entire record. The evidence shows DCCPS provided remedial services in the form of drug treatment, parenting classes, and psychological evaluations. The evidence shows appellant substantially complied with the DCCPS recommendations. What the evidence does not show is that these remedial services and rehabilitative programs had proven unsuccessful. The caseworker's opinion testimony that short term drug treatment would not be sufficient for appellant and appellant would require long term treatment does not show the remedial efforts were unsuccessful. Thus, we conclude the evidence was legally insuffi-

cient to meet the requirements of section 1912(d) of the ICWA.

### 2. Section 1912(f)—Evidentiary Requirement of the ICWA

■ Section 1912(f) states:

**Parental rights termination orders; evidence; determination of damage to child.** No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence *beyond a reasonable doubt, including testimony of qualified expert witnesses,* that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C.A. § 1912(f) (bold in original, italics added). Before appellant's rights could be terminated, DCCPS was required to present evidence in the form of expert testimony that appellant's continued custody would cause the child to suffer serious emotional or physical damage. We first consider whether the DCCPS caseworker, the only person to testify at the prove-up hearing, was qualified as an expert under the ICWA.

At the prove-up hearing, the only testimony concerning the qualifications of the DCCPS caseworker was the following:

Q. You have been working with CPS for how many years?

A. Nine and a half years.

Q. Okay. You have been a senior worker to assist in training other persons within your unit, correct?

A. Yes.

Q. Based upon that history and expertise, you are satisfied that adoption is realistic for this child; is that true?

A. Yes.

■ It is the role of the trial court to evaluate the qualifications and reliability of opinions of all experts, not just scientific ones. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 725–26 (Tex.1998). Rule 702 provides a witness is "qualified as an expert by knowledge, skill, experience, training, or education." TEX.R. EVID. 702.

■ We find no Texas cases instructive on the issue of expert qualifications under the ICWA; however, the issue has been considered in several other states. Other states have adopted guidelines promulgated by the United States Department of the Interior, Bureau of Indian Affairs. These guidelines provide:

D.4. Qualified Expert Witnesses

(a) Removal of an Indian child from his or her family must be based on competent testimony from one or more experts qualified to speak specifically to the issue of whether continued custody by the parents or Indian custodian is likely to result in serious physical or emotional damage to the child.

(b) Persons with the following characteristics are most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings:

(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.

(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

(iii) A professional person having *substantial education* and experience in the area of his or her specialty.

*In re K.H.,* 294 Mont. 466, 981 P.2d 1190, 1195–96 (1999) (quoting 44 Fed.Reg. 67583–95 (1979)); *Jordan v. Jordan,* 983 P.2d 1258, 1261 (Alaska 1999). While these guidelines are not binding on state courts, they do add a dimension to expert testimony not normally required under

state law. *See In re K.H.*, 981 P.2d at 1196. States that have adopted the guidelines did so because they "comport with the spirit" of the ICWA. *Id.*

■ When, as here, an ICWA proceeding takes place in state court, rather than a tribal forum, the trial court should take great precautions to ensure the prerequisites of the ICWA have been satisfied. In this case, the trial court did not meet the ICWA requirements because there is no evidence in the record of this particular caseworker's education and no evidence she was familiar with Indian culture and childrearing practices. Other than her nine-and-a-half years' experience with DCCPS, she was not shown to be any more qualified than any other social worker to testify in this proceeding. We conclude the State failed to establish this witness was a qualified expert under section 1912(f) of the ICWA.

■ Further, the standard for termination under section 1912(f) is "the continued custody of the child by the parent ... is likely to result in serious emotional or physical damage." 25 U.S.C.A. § 1912(f). This standard is notably different from the Texas standard, which includes a consideration of the "best interest of the child." *See* Tex. Fam.Code Ann. § 161.001(2) (Vernon Supp.2000). In the only Texas case discussing the application of the ICWA, the Houston, Fourteenth District, Court of Appeals, in determining whether good cause existed to deny a transfer to tribal court, observed the ICWA is "clearly concerned with the best interests of Indian children and the phrase 'best interests of Indian children' in the context of the ICWA is different than the general Anglo–American 'best interest of the child' standard used in cases involving non-Indian children." *Yavapai–Apache Tribe*, 906 S.W.2d at 169. The court further explained, "[u]nder the ICWA, what is best for an Indian child is to maintain ties with the Indian [t]ribe, culture and family." *Id.*

In this case, the State never inquired of its expert whether the mother's continued custody of the child would likely result in serious emotional or physical damage to the child; instead, the State asked the caseworker if she was satisfied "that it would be in the child's best interest to terminate the rights" of appellant. It is apparent from the context of the prosecutor's questions, the State was using the best interest of the child standard rather than the standard required by section 1912(f) of the ICWA. Because the State's only witness was not shown to be qualified as an expert and because the State employed the wrong standard to prove up this termination, we conclude the evidence in this case was legally insufficient to meet the standard of proof required under section 1912(f).

We sustain appellant's first issue. Because of our disposition of appellant's first issue, we do not reach appellant's second and third issues.

## DISPOSITION

■ Having determined the evidence is legally insufficient under the ICWA and reversal is required, we must consider the proper disposition of this case. Generally, when a legal insufficiency point is sustained, the reviewing court renders judgment in favor of the party bringing the point of error. *See Thorp v. Adair & Myers*, 809 S.W.2d 306, 308 (Tex.App.-Houston [14th Dist.] 1991, no writ). However, a case may be remanded when the interests of justice require a new trial for further development of the facts. *Id.; see also Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex.1992) (holding remand was appropriate disposition when there had been no trial on the merits); *Flores v. Brimex Ltd. Partnership*, 5 S.W.3d 816, 821 (Tex.App.-San Antonio 1999, no pet.).

We reverse the trial court's judgment terminating the parental rights of appel-

lant.[3] We remand this case to the trial court for further proceedings consistent with this opinion.

3. The decree of termination terminated both the biological mother's rights and the biological father's rights. The biological father is not a party to this appeal; thus, we do not address the termination of his rights.