# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00698-CV

**S. P., Appellant**

**v.**

**The Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 288,227-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this accelerated appeal, appellant S.P.[1] challenges the trial court's judgment terminating her parental rights. She claims that applicable standards for termination set forth in the Indian Child Welfare Act were not satisfied and require reversal of the trial court's judgment. *See* 25 U.S.C.A. §§ 1901–1963 ("ICWA" or "the Act"). We agree and will reverse the portion of the trial court's judgment terminating S.P.'s parental rights. In the interests of justice, we will remand that portion of the cause to the trial court for further proceedings consistent with this opinion. We will otherwise affirm the judgment of the trial court.

---

[1] We refer to the mother and her child by their initials only. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b).

## BACKGROUND

On October 17, 2016, the Texas Department of Family and Protective Services ("the Department") filed a petition for possession and temporary managing conservatorship of S.P.'s child, R.C.P., alleging neglectful supervision endangering the physical health or safety of R.C.P. The petition also sought to terminate the parental rights of S.P. and of the alleged father. That same day, the trial court entered emergency temporary orders appointing the Department temporary managing conservator of R.C.P.

On December 27, 2016, the Department notified S.P. that it believed that R.C.P. was a member of a federally recognized Indian tribe, the Muscogee (Creek) Nation, which entitled S.P. to rights under the ICWA. The Department also provided notice to the tribe, who declined to intervene. Following a de novo hearing before the trial court on August 2, 2017, the trial court signed a final judgment terminating S.P.'s parental rights.[2] S.P. appealed.

## DISCUSSION

In three issues, S.P. alleges violations of the ICWA. In her third issue, she contends that the evidence is legally insufficient to support the judgment under the Act. In response to that issue, the Department concedes that the evidence is legally insufficient and agrees that reversal is required. After reviewing the record and applicable authority, we conclude that the evidence is legally insufficient under the Act. Because S.P. is entitled to relief on her third issue, we do not reach her first and second issues.

---

[2] The judgment also terminated the parental rights of the alleged father, E.G. Because E.G. did not appeal from the judgment, he is not a party to this appeal, and we do not address the portion of the judgment terminating his parental rights.

2

## A.        Indian Child Welfare Act

The ICWA was enacted in 1978 in response to rising concern "over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes . . . ." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989).  The Act contains congressional findings that "an alarmingly high percentage of Indian families" were being broken up by unwarranted removal of their children by non-tribal public and private agencies and placed in non-Indian homes and institutions.  25 U.S.C.A. § 1901(4).  Statistical evidence showed that 25 to 35 percent of all Indian children had been separated from their families and placed in adoptive families, foster care, or institutions.  *See Mississippi Band of Choctaw Indians*, 490 U.S. at 32.  The adoption rate of Indian children was eight times greater than that of non-Indian children, and approximately 90 percent of the placements were in non-Indian homes.  *See id.* at 33; *see also Yavapai–Apache Tribe v. Mejia*, 906 S.W.2d 152, 161–62 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding) (detailing historical underpinnings of the Act).  Consequently, the Act articulates a federal policy that elevates preservation of Indian culture and communities:

> The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .

25 U.S.C.A. § 1902; *see also Mississippi Band of Choctaw Indians*, 490 U.S. at 36.

3

Congress sought to effectuate that policy by establishing procedural and substantive standards in all state child-custody proceedings involving an Indian child. *See* 25 U.S.C.A. § 1912(a); *Mississippi Band of Choctaw Indians*, 490 U.S. at 35. An "Indian child" includes an unmarried person under the age of 18 who is a member of an Indian tribe. 25 U.S.C.A. § 1903(4). A "child custody proceeding" includes an action resulting in the termination of the parent-child relationship. *Id.* § 1903(1)(ii). One of the Act's protective features requires that the Department satisfy a heightened evidentiary standard before the trial court may terminate the relationship between an Indian child and the child's parent:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

*Id.* § 1912(f). In a Texas termination proceeding, therefore, the Department must prove grounds for termination under the Texas Family Code by clear and convincing evidence, *see* Tex. Fam. Code §§ 161.001(b), 161.206(a), and grounds for termination under the ICWA beyond a reasonable doubt, *see* 25 U.S.C.A. § 1912(f). *See In re K.S.*, 448 S.W.3d 521, 536–39 (Tex. App.—Tyler 2014, pet. denied).

**B.** **The evidence is legally insufficient under the applicable ICWA standard**

In the present case, it is undisputed that the Act applies.[3]  Accordingly, the trial court's judgment states, in relevant part, that "[t]he Court finds by clear and convincing evidence and beyond a reasonable doubt that . . . the continued custody of the child by the parent is likely to result in the serious emotional or physical damage to the child." *See* 25 U.S.C.A. § 1912(f).  S.P. contends that the record contains insufficient evidence to support the trial court's finding under the applicable federal standard.[4]

**1.** **Standard of review**

S.P. does not specify whether she challenges the legal or factual sufficiency of the evidence or both.  Because she cites only the legal-sufficiency standard of review, we will construe her issue as a challenge to the legal sufficiency of the evidence only.[5]  *See Rischer v. State*, 85 S.W.3d 839, 842–43 (Tex. App.—Waco 2002, no pet.) (reviewing courts look to argument and

---

[3]  The record supports the trial court's finding that R.C.P. is a member of the Muscogee (Creek) Nation.  Although the tribe did not intervene, a tribe's failure to intervene in termination proceedings does not affect the applicability of the ICWA.  *See Doty-Jabbaar v. Dallas Cty. Child Protective Servs.*, 19 S.W.3d 870, 874 (Tex. App.—Dallas 2000, pet. denied) (construing 25 U.S.C.A. § 1912(a)).

[4]  S.P. does not challenge the sufficiency of the evidence to support termination of her rights under state law.

[5]  Furthermore, it is unclear whether factual sufficiency review is available in civil cases in which the standard of proof is beyond a reasonable doubt.  *See In re K.S.*, 448 S.W.3d 521, 539 (Tex. App.—Tyler 2014, pet. denied) ("Texas no longer applies a factual sufficiency review to challenges of evidence requiring proof beyond a reasonable doubt.") (following *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010)); *but see In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied) ("This court has a constitutional duty to review factual sufficiency when the issue is raised on appeal.") (declining to follow *Brooks*, 323 S.W.3d at 895).

authorities presented in party's brief to determine whether an issue challenges legal or factual sufficiency of evidence or both).

In reviewing the legal sufficiency of the evidence in a termination case in which the burden of proof is clear and convincing evidence, a reviewing court applies the standards of review set forth in *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). But because the applicable burden of proof under the ICWA is beyond a reasonable doubt, we must apply a heightened standard of review. *See* 25 U.S.C.A. § 1912(f); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005) ("[T]he standard for legal sufficiency works in tandem with the standard of review—whenever the standard of proof at trial is elevated, the standard of appellate review must likewise be elevated.") (internal quotation marks omitted). Therefore, when we review the legal sufficiency of the evidence pursuant to section 1912(f) of the ICWA, we must assess all of the evidence in the light most favorable to the verdict to determine whether a rational factfinder could have found that the evidentiary requirements of that provision were satisfied beyond a reasonable doubt. *See* 25 U.S.C.A. § 1912(f); *see also In re V.L.R.,* 507 S.W.3d 788, 795 (Tex. App.—El Paso 2015, no pet.) (applying legal-sufficiency standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *In re K.S.*, 448 S.W.3d at 539 (same). Under that standard, the factfinder may fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *See Jackson*, 443 U.S. at 319.

**2. The trial court's judgment was not supported by expert testimony as required under the ICWA**

S.P. contends that the evidence is legally insufficient to support the trial court's finding that "the continued custody of the child by the parent is likely to result in the serious emotional or physical damage to the child" because the Department failed to produce testimony of a "qualified expert witness" as required under the Act. *See* 25 U.S.C.A. § 1912(f); *see also In re K.S.*, 448 S.W.3d at 539 (termination finding under ICWA "must by supported by evidence that includes testimony from a qualified expert witness"). The Department concedes error on this point and agrees that reversal is required.

Only three witnesses testified at the termination hearing: S.P., R.C.P.'s foster parent, and Glendalys Mojica Gonzalez, the caseworker assigned to the case. The Department did not designate or proffer any of the witnesses as an expert, and the trial court did not make any rulings or findings regarding expert witnesses.

The Act does not define "qualified expert witness," and courts across the country have grappled with its meaning since the Act's passage. *See, e.g., In re D.S.P.*, 480 N.W.2d 234, 239–40 (1992) (collecting cases). However, the Bureau of Indian Affairs has created guidelines for state courts' use in Indian child-custody proceedings. *See* Bureau of Indian Affairs Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10146-02,10147 (Feb. 25, 2015) (updating original guidelines, 44 Fed. Reg. 67584-01, 67593 (Nov. 26, 1979)). Although the guidelines are not binding, Texas courts have consulted them when interpreting the ICWA. *See, e.g.*, *In re V.L.R.,* 507 S.W.3d at 796; *In re K.S.*, 448 S.W.3d at 529 (using earlier version of guidelines); *In re J.J.C.*, 302 S.W.3d 896, 900 (Tex. App.—Waco 2009, no pet.) (same);

7

*see also Yavapai–Apache Tribe*, 906 S.W.2d at 163–64 ("[T]he interpretation in the Guidelines should be given important significance.").

The guidelines address the applicable standards of evidence.[6] In relevant part, they describe "[w]ho may serve as a qualified expert witness":

> (a) A qualified expert witness should have specific knowledge of the Indian tribe's culture and customs.
>
> (b) Persons with the following characteristics, in descending order, are presumed to meet the requirements for a qualified expert witness:
>
> > (1) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.
> >
> > (2) A member of another tribe who is recognized to be a qualified expert witness by the Indian child's tribe based on their knowledge of the delivery of child and family services to Indians and the Indian child's tribe.
> >
> > (3) A layperson who is recognized by the Indian child's tribe as having substantial experience in the delivery of child and family services to Indians, and knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.
> >
> > (4) A professional person having substantial education and experience in the area of his or her specialty who can demonstrate knowledge of the prevailing social and cultural standards and childrearing practices within the Indian child's tribe.

80 Fed. Reg. at 10157.

---

[6] Commentary to the original version of the guidelines explained the purpose of the expert-testimony requirement, stating that "knowledge of tribal culture and childrearing practices will frequently be very valuable to the court" in placing specific behavior patterns "in the context of the total culture to determine whether they are likely to cause serious emotional harm." Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584-01, 67593 (Nov. 26, 1979).

We conclude that the record in the present case does not contain testimony of a "qualified expert witness" as required under the Act. *See id.*; *see also* 25 U.S.C.A. § 1912(f). The Department did not designate any experts prior to trial, did not proffer any expert-witness testimony at trial, and concedes on appeal that it produced no such testimony. Although the Department introduced the testimony of Gonzales, the caseworker assigned to the case, who testified that she believed termination was in R.C.P.'s best interest, the record does not show (and the Department does not contend) that Gonzales possessed the requisite expertise to satisfy the federal requirement. The record contains no evidence that she is a member of the Muscogee tribe or another tribe. *See* 80 Fed. Reg. at 10157. It contains no evidence that she is recognized by the Muscogee tribe as having substantial experience in the delivery of child and family services to Indians or knowledge of the prevailing social and cultural standards and childrearing practices within the tribe. *See id.* And it contains no evidence that she has substantial education and experience in her specialty or that she demonstrated knowledge of the prevailing social and cultural standards and childrearing practices within the Muscogee tribe. *See id.* In the absence of any evidence regarding her training, experience, or expertise, we cannot conclude that her testimony satisfied the statutory requirement. *See In re V.L.R.*, 507 S.W.3d at 796–97 (holding that case worker was not an expert under the Act where there was no evidence of her credentials or her familiarity with Indian cultural standards or practices); *Doty-Jabbaar v. Dallas Cty. Child Protective Servs.*, 19 S.W.3d 870, 877 (Tex. App.—Dallas 2000, pet. denied) (same); *see also* H.R. Rep. No. 95–1386, at 22 (1978) ("The phrase 'qualified expert witness' is meant to apply to expertise beyond the normal social worker qualifications.")

9

The failure of the Department to produce the kind of competent evidence expressly required under the Act to support termination constitutes a failure of proof. *See City of Keller*, 168 S.W.3d at 812 ("[W]hen expert testimony is required, lay evidence . . . is legally insufficient."); *see also Martin v. State*, 222 S.W.3d 532, 537 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (reversing involuntary-commitment order as unsupported by legally sufficient evidence where State failed to introduce expert testimony as required by involuntary-commitment statute). Therefore, even viewing all of the evidence in the light most favorable to the verdict, because the record does not contain the statutorily required qualified-expert testimony, we conclude that the evidence is legally insufficient to meet the standard of proof under section 1912(f). *See Jackson*, 443 U.S. at 319; *see also In re V.L.R.*, 507 S.W.3d at 796–97 (reversing judgment terminating parental rights because not supported by testimony of qualified expert witness as required under ICWA); *Doty-Jabbaar*, 19 S.W.3d at 877 (same). We sustain S.P.'s third issue. Because we reverse the portion of the judgment terminating S.P.'s parental rights on the basis of legally insufficient evidence, we do not reach S.P.'s remaining issues, which also challenge that portion of the judgment on alternative grounds. *See* Tex. R. App. P. 47.1 (opinion should be as brief as practicable and address every issue necessary to final disposition of appeal).

## C.     Disposition

The Department requests that we remand this cause to the trial court for further proceedings. S.P. has requested that we reverse the trial court's judgment without remand for further proceedings and grant her whatever relief we deem appropriate under applicable law.

When reversing a trial court's judgment, an appellate court must render the judgment that the trial court should have rendered, except when (1) remand is necessary for further proceedings or (2) the interests of justice require a remand for another trial. Tex. R. App. P. 43.3. This Court has previously remanded after reversing a judgment terminating parental rights as unsupported by legally sufficient evidence, observing that it is "in the child's best interest for the trial court to fully develop the evidence and render a judgment following consideration of the evidence." *Williams v. Williams*, 150 S.W.3d 436, 452 (Tex. App.—Austin 2004, pet. denied); *see also Doty-Jabbaar*, 19 S.W.3d at 877–78 (remanding after reversing termination order that was unsupported by legally sufficient evidence under ICWA). Our sister court has also observed that "in cases involving involuntary termination of parental rights . . . appellate courts are 'not in a position to determine whether simply to deny the petition for termination or render some other order in the best interest of the child.'" *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (quoting *In re C.M.C.*, 273 S.W.3d 862, 882 n.13 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The court explained that "circumstances surrounding the parent-child relationship may have changed since the trial court's original judgment, which would require a fact-finder to assess the new situation." *Id.* We thus conclude that the interests of justice require that we remand the cause to the trial court for proceedings consistent with this opinion.

## CONCLUSION

We reverse the portion of the trial court's judgment terminating the parental rights of S.P. and remand that portion of the cause for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d). If a new trial is held, we instruct the trial court to commence the trial no

later than 180 days after the mandate is issued by this Court. *See id.* 28.4(c). We otherwise affirm the judgment of the trial court.[7]


_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Field, and Bourland

Affirmed in Part; Reversed and Remanded in Part

Filed: March 9, 2018

---

[7] E.G. did not appeal from the trial court's judgment, and S.P. challenged only the portion of the judgment relating to termination of her parental rights. We therefore do not disturb the remaining portions of the judgment. *See Doty-Jabbaar*, 19 S.W.3d at 878 n.3.