

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00024-CV

_____

IN THE INTEREST OF A.W. AND M.W., CHILDREN

On Appeal from the 76th District Court
Titus County, Texas
Trial Court No. 40,040

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

## OPINION

In a suit brought by the Texas Department of Family and Protective Services (the Department), the trial court terminated Vince's and Emma's parental rights to their two children, A.W. and M.W.[1]  Vince and Emma appeal, maintaining that (1) the trial court lost jurisdiction over the case because the order retaining the case was defective, (2) the trial court reversibly erred by commenting on the weight of the evidence when it answered a written question from the jury, and (3) the trial court lacked jurisdiction to enter the order terminating Vince's and Emma's parental rights because they claim their children have Native American heritage.  For the reasons below, we affirm the trial court's judgment.

## I.      Background

On December 18, 2017, the Department filed an original petition for protection of A.W. and M.W., for conservatorship, and for termination in a suit affecting the parent-child relationship. After the entry of, among other things, an initial order for protection of a child in an emergency, a temporary order following adversary hearing naming the Department as temporary managing conservator of the children, a status hearing order, a November 7, 2018, permanency hearing order before final order that extended the case 180 days, and an order denying Vince's motion for continuance of trial, a jury was empaneled on January 22, 2019, to determine the merits of the case.

---

[1]In order to protect the children's privacy, we will refer to the appellants by pseudonyms and to the children by initials. *See* TEX. R. APP. P. 9.8.

After hearing the evidence, the jury found that Vince's and Emma's parental rights should be terminated and that the Department should be named managing conservator of the children.[2] On February 20, 2019, the trial court entered an order terminating Vince's and Emma's parental rights pursuant to Section 16.001, subsections (D), (E), and (O), of the Texas Family Code and finding that it was in the children's best interests to do so. *See* TEX. FAMILY CODE ANN. § 161.001(D), (E), (O) (Supp.). This appeal followed.

## II. Discussion

### A. The Trial Court Had Jurisdiction to Enter Its Termination Order

In their third point of error, Emma and Vince maintain that the "Native America Courts[,]" and not the trial court, had jurisdiction over the termination proceeding because the children were descendants of Muscogee (Creek) and Cherokee Nations. At the hearing on Vince's motion for new trial, Vince testified that he was a direct descendant of persons who were listed on the "Creek Nation. Freedmen role."[3] Without objection, the trial court admitted a document showing that

---

[2]During trial, the jury heard from multiple witnesses, some of whom testified, among other things, that (1) Vince and Emma tested positive for amphetamine and methamphetamine during the pendency of the case; (2) Vince had been arrested approximately fifty-nine times, including an arrest for domestic violence against Emma; (3) at the time of trial, Emma was incarcerated as a result of two charges of endangering a child; (4) Emma and Vince had loud verbal altercations, and the children had been present during some of them, including one incident when Vince pushed Emma; and (5) when the children came into the Department's care, both of them were "very, very delayed," nearly nonverbal, and very small for their age.

[3]In their joint first motion for new trial, Vince and Emma maintained,

On July 6, 2018, [Emma] pointed out in her letter to the trial court that certain lineal relatives (great-grandmothers) of the children were members of an Indian tribe with roll numbers as listed in the Dawes Rolls, and that the children therefore had Indian heritage. [Vince] has provided, and during the course of this case had, the "Creek Nation. Freedmen Roll" showing the enrollment of the great-grandmother [Ginny Lowe], married name [Smith]. Her Dawes roll Number is [xxxx]; she is a member of the Creek Nation; the enrollment sheet has the stamp of the U.S. Interior Department and is dated March 13, 1902. A true copy of that document is attached as Exhibit A, and its contents are incorporated herein for all purposes by reference. In light of that, the trial court reversibly erred in continuing to exercise jurisdiction over the proceedings, and was without jurisdiction to enter the

3

Vince's direct ancestors had "Dawes number[s]."[4]  "In [Vince's] opinion, that made him and his children, A.[W.] and M.[W.,] direct descendants of those members of Creek Nation."  Thus, according to Emma and Vince, the trial court erred in refusing to refer the children's case to the appropriate tribal court.

"[T]he protections enumerated in the [Indian Child Welfare Act (ICWA)] are mandatory as to the trial court and the Department, . . . they preempt state law, and the failure to follow the ICWA may be raised for the first time on appeal." *In re J.J.C.*, 302 S.W.3d 896, 899 (Tex. App.—Waco 2009, no pet.) (citing 25 U.S.C.A. § 1914).  A trial court's application of the ICWA is a question of law, which we review de novo.  *See In re W.D.H.*, 43 S.W.3d 30, 33 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

The ICWA applies to all state child custody proceedings involving an Indian child[5] where a "court knows or has reason to know that an Indian child is involved[.]"  *Doty-Jabbaar v. Dallas Cty. Child Protective Servs.*, 19 S.W.3d 870, 874 (Tex. App.—Dallas 2000, pet. denied) (citing 25 U.S.C.A. § 1912(a)).  When the trial court knows or has reason to know that an Indian child is

---

"Order of Termination."  Under 25 U.S.C. § 1911 (a) and (b), exclusive jurisdiction lies with the Indian tribal courts in matters concerning child custody, and a mandatory transfer of the proceeding is necessary upon petition of a parent.

[4]The trial court also admitted a one-page document, entitled "My Family," which appeared to have been reproduced from an internet website and purported to be Vince's family tree.

[5]The ICWA defines an Indian child as an "unmarried person who is under the age of eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.A. § 1903(4).  "The ICWA, however, does not define what constitutes being a 'member' or 'being eligible for membership.'" *J.J.C.*, 302 S.W.3d at 900 (citing 25 U.S.C.A. § 1903(4).  Each individual tribe uses its own criteria for determining tribe membership. *In re R.R.*, 294 S.W.3d 213, 217–18 (Tex. App.—Fort Worth 2009, no pet.).  A child's parent may petition a court of competent jurisdiction to set aside involuntary termination for failure to comply with the ICWA. *Id.*

4

involved, "[i]t is the duty of the trial court and the Department of Family and Protective Services to send notice in any involuntary proceeding . . . ." *J.J.C.*, 302 S.W.3d at 900 (citing 25 C.F.R. § 23.11). "Section 23.11 requires that the notice be sent to the 'appropriate Area Director' and the Secretary of the Interior." *Id.* at 901 (citing 25 C.F.R. § 23.11(a), (b), (f)).

The Bureau of Indian Affairs (BIA) Guidelines specify the procedure for determining the status of an alleged Indian child under the ICWA:

> When a state court has reason to believe a child involved in a child custody proceeding is an Indian, *the court shall* seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe.
>
> . . . .
>
> **The determination by a tribe that a child is or is not a member of that tribe, is or is not eligible for membership in that tribe, or that the biological parent is or is not a member of the tribe is conclusive.**
>
> . . . .
>
> Circumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include . . . (i) Any party to the case . . . informs the court that the child is an Indian child . . . (ii) Any public or state-licensed agency involved in child protection services or family support has discovered information which suggests that the child is an Indian child.
>
> . . . .
>
> In an involuntary child custody proceeding, *the state court shall make inquiries* to determine if the child is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe.

*In re R.R., Jr.*, 294 S.W.3d 213, 219 (Tex. App.—Fort Worth 2009, no pet.) (emphasis added) (citing BIA Guidelines for State Courts; Indian Child Custody Proceedings (BIA guidelines), 44 Fed. Reg. 67,586 (Nov. 26, 1979)).

After Vince and Emma brought to the court's attention that they believed the children were of American Indian descent, the Department sent a notice of pending custody proceeding involving Indian child to the "Muscogee (Creek) Nation[,] C/O ICWA Representative" in Okmulgee, Oklahoma. The Department also sent a letter dated July 7, 2018, addressed to Bill John Baker, Principal Chief, Eastern Oklahoma, requesting that he confirm whether the children or their parents were members of the Cherokee tribe, or if the children were eligible for membership.[6] The record contains a response to the Department's notifications from Donna Gould, an intake specialist for the Muscogee (Creek) Nation. By letter, she stated,

> Please be advised that the Indian Child Welfare Program has examined the tribal records and the above named children cannot be traced within our tribal records based upon the information provided regarding blood-related immediate family members.

> The above named children will not be considered as "Indian children" in relationship to the Muscogee (Creek) Nation as defined in the Federal Indian Child Welfare Act, 25 U.S.C. section 1903(4). Therefore, the Muscogee (Creek) Nation is NOT empowered to intervene in this matter.

In addition, Lisa Foreman, with the Office of Indian Child Welfare for the Cherokee Nation, responded to the Department's notification, stating,

> Cherokee Nation Indian Child Welfare has examined the tribal records regarding the above named child/children and none of the names provided can be found.

> The child is/children are NOT an "Indian child/children" in relation to the Cherokee Nation as defined in the Federal Indian Child Welfare Act, 25 U.S.C. Section

---

[6]On August 14, 2019, this Court entered an order requiring the trial court or the Department to provide notices of the proceedings to the appropriate regional directors and the Secretary. On September 16, 2019, the trial court held a hearing, and the Department provided the trial court with documentation showing that the Secretary of the Interior/Bureau of Indian Affairs, the Regional Director of the Eastern Oklahoma Region, and the Regional Director of the Southern Plains Region had been notified of the proceedings and had been provided with the required information.

1903(4). Therefore, the Cherokee Nation does not have legal standing to intervene based on the information exactly as provided by you.

After considering the evidence, including the named-tribe's findings, the trial court found that A.W. and M.W. were not American-Indian children subject to the terms of the ICWA. As noted, the Nations' determinations of tribal membership are conclusive. *Id.* Consequently, the trial court did not err in retaining jurisdiction over the case.[7]

We overrule Emma and Vince's third point of error.

### B.     The Trial Court Did Not Lose Jurisdiction Over the Case

The Department was granted temporary managing conservatorship of the children on December 18, 2017. Thus, at that point in the proceedings, the deadline for a dismissal would

---

[7]Emma and Vince argue that the Creek and Cherokee Nations' membership determinations are unconstitutional and are based on impermissible racial discrimination. They therefore maintain that these determinations were not entitled to any weight in the trial court and are not entitled to any weight in this Court. Emma and Vince point to *Cherokee Nation v. Nash* in support of their argument. *See Cherokee Nation v. Nash*, 267 F.Supp.3d 86, 140 (D.D.C. 2017) (holding that "Cherokee Nation's sovereign right to determine its membership" was limited by an "1866 Treaty" giving certain descendants of former slaves held by Cherokee Nation prior to the Civil War "a present right to citizenship in the Cherokee Nation that is coextensive with the rights of native Cherokees"). Thus, Emma and Vince essentially argue that the holding in *Nash* supersedes caselaw holding that tribal membership determinations cannot be challenged in a non-tribal court. *See Smith v. Babbitt*, 875 F.Supp. 1353, 1361 (D. Minn. 1995) (holding that federal courts lack jurisdiction to consider challenge to tribe's membership determinations because "[a] sovereign tribe's ability to determine its own membership lies at the very core of tribal self-determination; indeed, there is perhaps no greater intrusion upon tribal sovereignty than for a federal court to interfere with a sovereign tribes' membership determinations") (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 (1978)). To begin with, it seems doubtful that this Court would have jurisdiction to consider such a challenge. *See Fisher v. Dist. Court of Sixteenth Judicial Dist. of Montana, in & for Rosebud Cty.*, 424 U.S. 382, 387–88 (1976) (per curiam) ("State-court jurisdiction [over child custody case involving Indians living on reservation] plainly would interfere with the powers of self-government conferred upon the [tribe]"), and *Williams v. Lee*, 358 U.S. 217, 220 (1959) (holding that Arizona state courts had no jurisdiction to consider debt claim by owner of reservation store against Indians living on the reservation, noting, "Congress has also acted consistently upon the assumption that the States have no power to regulate the affairs of Indians on a reservation"). Yet, even if we did have jurisdiction, at a minimum, the tribes would be necessary parties to any litigation regarding the constitutionality of tribal membership determinations. Because neither the Muskogee (Creek) Nation nor the Cherokee Nation are parties to this litigation, we need not address the issue of our jurisdiction to consider Emma and Vince's point of error or the merits of that point.

have been the first Monday after December 18, 2019. *See* TEX. FAM. CODE. ANN. § 263.401(a).[8]

On October 2, 2018, the day of the permanency hearing, the trial court entered an order to reconvene the hearing on November 6, 2018. Ten days later, the trial court entered an order setting a jury trial for January 22, 2019. As ordered by the trial court, the permanency hearing reconvened on November 6, 2018.

On November 7, 2018, the trial court entered a permanency hearing order before final trial.[9] In that order, the trial court found that pursuant to Section 263.401(b),[10] there existed "extraordinary circumstances" that required the children to remain in the temporary managing conservatorship of the Department and that it was in the children's best interests to make that

---

[8]Section 263.401(a) states,

        (a)      Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child is terminated and the suit is automatically dismissed without a court order.

TEX. FAM. CODE. ANN. § 263.401(a).

[9]The order was filed on November 7, but was signed by the trial court on November 6.

[10]Section 263.401(b) states,

        (b)      Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a). If the court retains the suit on the court's docket, the court shall render an order in which the court:

            (1)      schedules the new date on which the suit will be automatically dismissed if the trial on the merits has not commenced, which date must be not later than the 180th day after the time described by Subsection (a);

            (2)      makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and

            (3)      sets the trial on the merits on a date not later than the date specified under Subdivision (1).

TEX. FAM. CODE. ANN. § 263.401(b).

finding. Due to those extraordinary circumstances, the trial court ordered an extension of not more than 180 days and retained the case on its docket. Vince and Emma contend that because the trial court's November 7, 2018, order did not contain a specific dismissal date or a trial date, its order did not extend the case and, therefore, the trial court lost jurisdiction. We disagree.

*In re Bishop* was a mandamus action brought by the parents of a child to compel the trial court to dismiss a suit affecting the parent-child relationship filed by the Department, or to order the Department to return the child to them. *In re Bishop*, 8 S.W.3d 412, 414 (Tex. App.—Waco 1999, orig. proceeding). Just as Emma and Vince argue in this case, the parents in *Bishop* based their argument on Section 263.401 of the Texas Family Code. The extension order in *Bishop* stated that "this suit shall be dismissed on **dates set by amended scheduling order** which date is not later than 180 days following the date this temporary order is rendered." *Id*. at 418. The appellate court found that although the trial court's order lacked a date certain for dismissal, the extension order stipulated that the latest date the trial court could have scheduled a dismissal was 180 days after the entry of the trial court's extension order. *Id*. at 418–19. Thus, the appellate court found that the extension order was proper. *Id*. at 419.

Here, the trial court made the following specific findings in its November 7 order:

9.1     Pursuant to § 263.403(b), Texas Family Code, this suit shall be dismissed not later than 180 days following the date this temporary order is rendered, unless the child must be removed from said home prior to that date.

9.2     Pursuant to § 263.306(a-1)(7), Texas Family Code, the Court determines that this suit shall be and is hereby set for submission of order hearing on **February 5, 2019** at 9:00 a.m. in 76th/276th Judicial District Court of Titus County in Mt. Pleasant, Texas.

9

Clearly, the 180-day extension began to run from the date of the entry of that order, thereby delineating a date upon which the suit was to be disposed of or dismissed.

Vince and Emma also maintain that the trial court's failure to set a trial date deprived the trial court of jurisdiction. Contrary to their assertion, the trial court did set a trial date of January 22, 2019, which was, in fact, the date on which the trial began. There is nothing in the record to indicate that the January 22, 2019, trial date was ever cancelled or continued by the trial court, nor is there anything to indicate that Vince and Emma believed the trial date to be anything other than January 22, 2019. Moreover, the January 22, 2019, trial setting was well within the time constraints contained in the trial court's order extending the proceedings 180 days.

We overrule Vince and Emma's first point of error.

## C. Vince and Emma Failed to Preserve Error in Regard to the Trial Court's Response to a Jury Question

During their deliberation, the jury asked the trial court by written question, "If parental rights are terminated and children are put up for adoption with . . . nonfamily — Will [Emma and Vince] be eligible for visitation?" After receiving the question, the trial court read the note aloud to the parties and their attorneys. It then stated, "I'll listen to your responses, but my suggestion is no." The State responded, "Your Honor, instead of giving out a definite no, I think you would just say that you cannot answer, and you're directed by the charge[]s before you." The trial court informed the State, "I don't believe in answering questions like that to the jury."

Counsel for the Department then suggested, "I guess it could be no unless agreed by the adoptive -- yeah." The trial court stated, "I'll put that. I'll put no without the agreement of adoptive parents. I think it's unusual that they come up with the very one item of conflict we've had."

10

Neither Emma's nor Vince's attorney responded or objected to the trial court's ruling. Yet, on appeal, Emma and Vince contend that the trial court's answer to the jury was reversible error.

Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request . . . stat[ing] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1). Because neither Emma nor Vince objected to the trial court's ruling, they have waived the issue for our review.

Vince and Emma's second point of error is overruled.

## III. Conclusion

We affirm the judgment of the trial court.

Ralph K. Burgess
Justice

Date Submitted:     September 30, 2019
Date Decided:       October 24, 2019

11